KATHRYN SNEDDEN, Adm'r of the Estate of Melvin Snedden, Deceased, Plaintiff-Appellant, *v.* RICHARD J. LAVENKA, Defendant-Appellee.

First District (2nd Division)    No. 79-2224

Opinion filed January 27, 1981.

Herbert F. Stride and William J. Harte, Ltd., both of Chicago (William J. Harte, of counsel), for appellant.

John E. Guy, of Abramson & Fox, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

As administrator of the estate of her husband, Melvin Snedden, plaintiff brought a wrongful death action against defendant, Richard J. Lavenka, claiming that defendant's negligence in the operation of his automobile on August 13, 1975, caused an accident which led to Snedden's death on August 31, 1975. Defendant admitted that Snedden died from injuries sustained in the accident but denied decedent's freedom from contributory negligence. The jury returned a verdict for defendant. From that verdict plaintiff appeals, presenting the following issues for review: (1) whether the jury's verdict was against the manifest weight of the evidence; (2) whether the trial court properly granted defendant's motion *in limine* prohibiting plaintiff from introducing evidence of the decedent's medical condition after the accident; (3) whether the trial court should have permitted plaintiff to introduce evidence of the decedent's habits of due care; (4) whether the trial court erred in allowing defendant to file an amended answer at the close of the evidence which raised the defense that plaintiff's decedent had violated a statute; (5) whether there was sufficient evidence in the record to support a jury instruction on defendant's theory that Snedden was contributorily negligent in violating a statute; and (6) whether the trial court properly granted defendant's motion for summary judgment as to plaintiff's cause of action seeking damages for decedent's conscious pain and suffering.

For the reasons hereinafter set forth we affirm the judgment of the circuit court of Cook County.

Plaintiff's decedent, Melvin Snedden (hereinafter referred to as Snedden), died on August 31, 1975, from injuries he sustained following a collision on August 13, 1975, between his automobile, a Honda Civic, and a Cadillac driven by defendant, Richard J. Lavenka (hereinafter referred to as Lavenka). The accident occurred on a bridge carrying southbound traffic on Route 45 (Mannheim Road) just north of Route 83.

Waiving her rights under the so-called "Dead Man's Act" (Ill. Rev. Stat. 1977, ch. 51, par. 2), plaintiff called Lavenka as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60).

Lavenka testified that on the date of the accident, August 13, 1975, he

was employed as a salesman for an alarm company. After making his last business call for the day at the downtown Ramada Inn, Lavenka started to drive home to Palos Heights. His usual route was to take the Dan Ryan Expressway to the Stevenson Expressway and the Stevenson to Route 45 (Mannheim Road). Normally he would drive south on Route 45 until he reached 131st Street.

On the day of the accident and for some months before, construction work had been under way on the "Cal-Sag" bridge supporting the two lanes of southbound traffic on Route 45 just north of the Route 83 junction. The left lane across the bridge was barricaded and a reduced speed zone of 30 mph was in effect for approximately 1,000 feet before the bridge. Photographs of the bridge and its north and south approaches were admitted into evidence and were made part of the record on appeal.

Since he frequently traveled this route, Lavenka was familiar with the construction barricades and knew that at some point before the left lane ended he would have to move from that lane into the single southbound lane over the bridge. He reached the construction area at dusk, about 8 p.m., and estimated that he was traveling 40 to 45 mph. When he was several hundred feet from the first barricade, Lavenka, who was still in the left lane, looked into his rearview mirror to see if there were any cars in the right lane. He saw one car, seven to 12 car lengths behind him. Lavenka turned on his directional signals and, a few seconds after he had seen the car in his rearview mirror, "eased into the right lane." At that same instant he saw that Snedden's Honda was right at his side. Over half of Lavenka's car had crossed over into Snedden's lane when there was contact. The passenger side of Lavenka's Cadillac hit the driver's side of Snedden's Honda. Lavenka estimated that in the three or four second interval between the time he first saw the Honda in his mirror and when the impact occurred, the Honda had traveled approximately 400 to 500 feet. Lavenka estimated that a second or two after impact, the Honda was moving between 60 and 65 mph. After the inital contact, Lavenka drove another 100 to 150 feet. The Honda traveled 200 feet beyond that and came to rest in a gulley north of the bridge. Lavenka identified plaintiff's exhibits 6 through 10 as photographs of the damage to his Cadillac.

After he brought his car to a stop, Lavenka went to check on the driver of the Honda, Snedden, who was lying unconscious on the front seat. Within a couple of minutes Lavenka asked a passing motorist to radio the police who arrived 10 or 15 minutes after the accident. An officer checked Snedden's condition, then called for a fire department ambulance which transported Snedden to Palos Community Hospital. Lavenka then drove home.

After plaintiff testified in support of her claim for pecuniary loss, her

attorney tried to elicit her opinion of decedent's driving habits. Defense counsel objected, claiming that evidence of decedent's habits was inadmissible since plaintiff had elected to waive the Dead Man's Act and call defendant as an eyewitness. The objection was sustained. On cross-examination plaintiff admitted that her husband was familiar with the area where the accident had occurred.

Plaintiff then called Dr. L. J. Blakeman, Jr., an osteopathic surgeon who examined Snedden on August 13, 1975, at Palos Community Hospital. When Dr. Blakeman was asked to relate the findings of his examination, defense counsel raised an objection which the trial court sustained. Plaintiff then made an offer of proof that Dr. Blakeman would testify that he and Dr. Di Vincenzo performed surgery on Snedden. In the course of that surgery they opened the skull and found evidence of a brain contusion and laceration. Dr. Blakeman would testify further that injuries observed could have been sustained in a whiplash type of movement of the head. Injuries of this type allegedly would have corroborated plaintiff's theory of the case that defendant "abruptly pulled into the lane of Plaintiff, causing an impact between the two vehicles, thereby causing a movement of the head on the body of the Plaintiff within the car, causing these injuries."

After Dr. Blakeman was excused, plaintiff's counsel expressed his intention to introduce testimony through decedent's daughters of Snedden's careful driving habits. The court ruled that the testimony was inadmissible because there was an eyewitness to the accident. Counsel then made an offer of proof as to what the daughters would say if they had been allowed to testify on that matter. The daughters then testified as to their relationship with their father and his health, activities and hobbies. After reading into evidence the mortality expectancies for the plaintiff and her three children, plaintiff's counsel rested.

In defense Lavenka testified that at no time before the accident occurred did he hear a horn or the squeal of tires. At the same instant Lavenka saw the Honda in the lane next to his, he swerved sharply to the left and applied the brakes. He ran into the barricades on the inner (left) lane and slid 100 feet before stopping on the bridge. After the initial impact, which Lavenka described as a glancing blow, the Honda traveled 100 feet straight south, then veered left into the barricades. The car careened off of a concrete abutment, hit a guardrail, went into a gulley separating the north and southbound lanes, then came to rest back on the highway. Lavenka said that he never lost control of his own vehicle.

On cross-examination Lavenka, using an average car length of 12 feet, estimated that when he first saw a vehicle behind him on Route 45, it was 12 car lengths back. Further cross-examination revealed that in his

deposition Lavenka had said he looked in his rearview mirror twice before moving into the adjoining lane, and that his car had gone beyond the bridge and into the gulley. On redirect, Lavenka stated that he brought his car to a complete stop on the bridge and that it was Snedden's car which had gone into the gulley. Finally, Lavenka said that when he saw the Honda the second time he saw it through the window of the right door and not through the rearview mirror.

The second witness to testify for the defense was William McGarvey, who at the time of the accident was an Illinois State Trooper. In response to a report of an accident, McGarvey drove to the scene, arriving about 8:35 p.m. He found Lavenka's Cadillac stopped on the bridge in the inner southbound lane. Snedden's vehicle was on the highway approximately 200 feet south of Lavenka's. There was 140 feet of skidmarks behind Lavenka's Cadillac. McGarvey observed another set of skidmarks leading up to Snedden's Honda. In McGarvey's opinion these marks were fresh and had been made by the Honda. They began at approximately the same point where Lavenka's skidmarks began and curved to the left. The marks left by the Honda indicated that it traveled approximately 162 feet beyond the point of impact, then struck a concrete abutment, then hit a post supporting a guardrail for the northbound traffic 51 feet beyond the abutment and finally came to rest 115 feet beyond the guardrail. Photographs of the abutment, the guardrail and the damaged Honda were introduced into evidence. On cross-examination McGarvey admitted that in his official report on the accident he said that he "did not measure the distance of the skid marks made by the Cadillac prior to the first point of impact [the collision between the two cars] because it was difficult to determine that exact point." Many, if not all, of the barricades in the inner lane on the bridge had been knocked down. In his report McGarvey failed to note that the Snedden car had skidded after braking.

The third and final witness called by defendant was Willard Anthony Alroth, a traffic engineering consultant. After qualifying Alroth, defense counsel intended to ask him whether he could determine the speed of Snedden's Honda relative to that of Lavenka's Cadillac. The trial court sustained plaintiff's objection to this testimony on the ground that Alroth's testimony was offered, in effect, to reconstruct the accident. Since there was an eyewitness to the accident whose testimony was, in the trial court's opinion, clear and convincing, the reconstruction testimony would be improper. Following this ruling, both sides rested. The jury returned a verdict in defendant's favor.

## I.

Plaintiff's first argument on appeal is that the trial court erred in not

granting his motion for a new trial because defendant's account of how this accident took place was incredible as a matter of law and against the manifest weight of the evidence. We cannot agree.

■■ The standard of review applicable to denials of motions for new trials is whether the jury's verdict was contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310-11, 356 N.E.2d 32.) For a verdict to be against the manifest weight of the evidence, it must be clearly and palpably against the weight of the evidence or an opposite conclusion must be clearly apparent. (*Rankin v. Hojka* (1976), 42 Ill. App. 3d 440, 446, 355 N.E.2d 768.) Although no special interrogatories were submitted to the jury on the question of contributory negligence, it is clear from an examination of the record and a review of the briefs and the arguments of the parties that the key factual issue in this case was whether plaintiff's decedent was free from contributory negligence.

Lavenka testified that when he first saw a vehicle in his rearview mirror, it was 400 to 500 feet behind his. Plaintiff argues that it would have been impossible for any normal vehicle, much less a Honda, to catch up with Lavenka in four seconds.[1] As a result, plaintiff concludes that either Lavenka's characterization of the lane change as "casual" or "easing" was mistaken or that Lavenka moved into Snedden's lane at the same moment he signaled. Although on one occasion Lavenka testified that the Honda was 400 to 500 feet behind his Cadillac when he first signaled, he also testified that it was between seven and 15 car lengths back. When he was asked to state what figure he was using for an average car length, Lavenka said 12 feet. He then estimated that the Honda was 12 car lengths behind him when he turned on his signal. This would have been approximately 144 feet. At his stated speed of 40 to 45 mph, Lavenka was traveling between 58 and 66 feet per second. If, as Lavenka estimated, Snedden had been moving at 65 mph, then Snedden's vehicle would have covered 95 feet per second and would have caught up with Lavenka's Cadillac in approximately four seconds. Moreover, the photographs of the damage to the vehicles in this accident corroborate Lavenka's testimony that he "eased" into the adjoining lane. Lavenka testified that the Honda was "a reasonable amount of space behind him" and that "it was so far back, it was no concern of mine to keep it in the mirror, so I put on my turn signals and eased into that lane." He testified further that "when I turned on my signals, I looked in the rearview mirror. I just casually turned into the lane because I felt I had plenty of time."

■■ Contrary to plaintiff's argument, there appears to be nothing incredible about Lavenka's account of how this accident occurred. All of the

---

[1] Given Lavenka's estimated speed of 45 mph, no vehicle 400-500 feet behind him could pass in four seconds unless that vehicle was moving at 125 mph.

arguments which plaintiff now addresses to this court were made to the jury which nevertheless found for defendant. If the jury chose to accept Lavenka's narration, then it reasonably could have found that in the four seconds after Lavenka turned on his signals, Snedden should have slowed down or taken some other evasive action. A driver of an automobile must use every reasonable precaution to avoid a collision with the automobile ahead. (*Ryon v. Javior* (1979), 69 Ill. App. 3d 946, 952, 387 N.E.2d 936.) A driver approaching from the rear has the duty to keep a safe lookout and must take into account the prospect of having to stop his vehicle suddenly. (*Apato v. Be Mac Transport Co.* (1972), 7 Ill. App. 3d 1099, 1101, 288 N.E.2d 683.) Here, of course, Snedden's car was not traveling in the same lane as Lavenka's. But there was evidence presented from which the jury reasonably could have concluded that Snedden had an opportunity to avoid this accident. In light of that evidence we are unable to hold as a matter of law that the jury's verdict was against the manifest weight of the evidence. The trial court properly denied plaintiff's motion for a new trial.

## II.

Prior to trial defendant made a motion *in limine* to prohibit plaintiff from introducting any evidence of the decedent's medical condition, which the court allowed. During the course of the trial plaintiff called Dr. L. J. Blakeman, Jr., Snedden's family physician, to testify regarding his examination of Snedden at Palos Community Hospital. Defendant objected on the ground that Blakeman's testimony was precluded by the motion *in limine*. Plaintiff then made an offer of proof that if he were allowed to testify, Dr. Blakeman would state that he, along with Dr. Di Vincenzo, performed a neurological operation on Snedden in which they discovered substantial brain injuries which could have been caused by a whiplash movement of the head. The offer of proof was denied. Plaintiff now contends that this was improper because Dr. Blakeman's testimony would have supported plaintiff's theory of the case that Lavenka "abruptly crossed into the decedent's lane of traffic and collided with the decedent's car." Since defendant denied that the operation of his vehicle proximately caused the collision or the injuries and denied decedent's freedom from contributory negligence, plaintiff contends that the exclusion of Dr. Blakeman's testimony was improper. Defendant responds that the offer of proof was inadequate.

We believe that the offer of proof was properly denied. The undisputed evidence presented in this case established that after the initial impact between the two vehicles, Snedden's Honda careened into a concrete abutment. In oral argument plaintiff conceded that it was speculative to suggest that Dr. Blakeman could attribute the injuries he observed to the

initial impact between the two vehicles and not to the subsequent collision with the abutment. In light of this, his testimony would not have been probative on the issue for which it was being offered. As the court noted in *Hession v. Liberty Asphalt Products, Inc.* (1968), 93 Ill. App. 2d 65, 71, 235 N.E.2d 17, "the requisite formality of an offer of proof will depend upon the circumstances of the particular case. Where it is obvious that the witness is competent to testify to a fact, and it is obvious what his testimony will be if he is permitted to give it, a brief statement by counsel may suffice. * * * [W]here it is by no means clear what the witness will say, or what his basis will be for saying it, the offer of proof must be considerably more detailed and specific than the statement counsel made here." Although Dr. Blakeman might have been qualified to testify that the injuries could have been caused by a violent whiplash movement of the head, he had no basis for stating whether those injuries were caused by the first or second impact and none was offered. "An offer of proof serves no useful purpose at all if it does not demonstrate (to both trial and appellate courts) the admissibility of the testimony which was foreclosed by the ruling complained of." (*Miller v. Chicago Transit Authority* (1966), 78 Ill. App. 2d 375, 383, 223 N.E.2d 323.) Plaintiff's offer of proof was properly denied.

## III.

■■ Plaintiff contends that the trial court erred in sustaining objections to evidence of Snedden's careful driving habits. The decisions of our courts have established that "where there are no eyewitnesses to an accident, or where the only eyewitnesses are silenced by death, amnesia, mental incompetency, or the Evidence Act (Ill. Rev. Stat. 1975, ch. 51, par. 2) evidence of the plaintiff's pertinent habits may be admitted on the issue of whether the plaintiff was in the exercise of due care immediately prior to and at the time of the accident." (*Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989, 997, 365 N.E.2d 43.) As the court observed in *Gasiorowski*, at pages 997-98:

"The essential thrust of these holdings has been that in such situations, where no better evidence on the issue is available, habit evidence is admissible in order to give the plaintiff a fair chance to prove his freedom from contributory negligence. This rule of necessity, however, does not extend beyond its own reason. Where there are available competent witnesses who have observed and can relate enough of the circumstances of the accident so as to form a sufficient basis from which the trier of fact might reasonably infer the exercise of or failure to exercise due care by the plaintiff, habit evidence, being unnecessary, should not be admitted. *Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12; *Peltz v. Chicago*

*Transit Authority* (1975), 31 Ill. App. 3d 948, 335 N.E.2d 74; *Driessens v. Verkruyse* (1964), 46 Ill. App. 2d 87, 196 N.E.2d 353."

Plaintiff does not question the principle that habit evidence is inadmissible where there is an eyewitness but contends that defendant cannot be considered an eyewitness because he could not testify regarding "decedent's exercise of or failure to exercise due care prior to and at the time of the impact. Defendant is unable to describe *any* actions by the decedent in the control of his car from the moment he glanced in his rearview mirror and saw the decedent's car until the moment of impact at least three to four seconds later."

Plaintiff states that defendant's "glance into his rearview mirror was only 'instantaneously, a second' and 'very briefly.'" Defendant's answer, "instantaneously, a second" was given in response to the following question by plaintiff: "How long would you have looked at that car in your mirror when you observed it there?" The clear import of the question was how long did defendant look in his rearview mirror before he recognized that there was a vehicle behind him, not how long did he look in the mirror. This is evidenced by counsel's next question: "Can you estimate for us in any way the amount of time you would have looked in your mirror at that car?" Lavenka's answer was that the car was so far back "it was no concern of mine to keep it in the mirror, so I put on my turn signals and eased into that lane." Later in his testimony Lavenka estimated that the moment of impact "was much shorter" than the amount of time he looked into the rearview mirror when he first saw plaintiff's decedent. Although it may be correct to assert that defendant glanced into his rearview mirror only once, and then "very briefly" before he signaled and began to move into the open lane, that did not prevent him from being considered an eyewitness.

■■ ■ Whether a defendant may be considered an eyewitness is determined by the circumstances he observed. If defendant could relate circumstances from which the decedent's behavior and operation of his automobile might be reasonably inferred, he may be termed an "eyewitness." (*Gasiorowski*.) It is not necessary that an eyewitness see everything that occurred at the accident scene. (*Plank v. Holman* (1970), 46 Ill. 2d 465, 469, 264 N.E.2d 12.) Here we believe there was sufficient evidence for the trial court to rule that defendant's testimony precluded evidence of decedent's habits of due care.

Lavenka testified that three or four seconds elapsed from the moment he switched on his turn signal until he began to move into the right lane. In light of Lavenka's estimate of how far behind him Snedden's car was when he first indicated his intention to change lanes, the jury could have inferred that Snedden had an opportunity to avoid the accident by slowing down or honking or taking some other evasive action.

We cannot say that such an inference was unreasonable. Under these circumstances, therefore, evidence of decedent's habits of due care was properly excluded. Plaintiff's counsel acknowledged this when, immediately before jury selection commenced, he advised the trial court that he was going to waive the Dead Man's Act and call the defendant as an adverse witness: "I will not, therefore, bring in any evidence of careful habits of the deceased since there will be an eyewitness to the occurrence * * *."

## IV, V.

At the close of all the evidence plaintiff submitted a fourth amended complaint in which she alleged, for the first time, that defendant had carelessly and negligently violated section 11—709(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—709(a)), which states that whenever any roadway has been divided into two or more clearly marked lanes for traffic, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." The trial court allowed plaintiff to file this amended complaint whereupon defendant moved to file an amended answer pleading plaintiff's violation of sections 11—704(a)(3) (Ill. Rev. Stat. 1973, ch. 95½, par. 11—704(a)(3)), improperly attempting to pass another vehicle on the right; 11—709(c) (Ill. Rev. Stat. 1973, ch. 95½, par. 11—709(c)), failing to observe a designated required lane change control; 11—710(a) (Ill. Rev. Stat. 1973, ch. 95½, par. 11—710(a)), following too closely; and 11—601(a) and (b) (Ill. Rev. Stat. 1973, ch. 95½, pars. 11—601(a) and (b)), driving too fast for conditions and in violation of posted speed restrictions. After extended argument, the court struck all the statutory defenses raised in the amended answer except 11-709(c) which states:

> "Official traffic control devices may be erected directing specific traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway and drivers of vehicles shall obey the directions of every such sign." Ill. Rev. Stat. 1973, ch. 95½, par. 11—709(c).

The jury was instructed on both 11—709(a) and (c). In her fourth and fifth arguments on appeal, plaintiff contends that the trial court erred in allowing defendant to plead 11—709(c) as a defense and in thereafter instructing the jury on his subsection. Plaintiff states that (1) 11—709(c) does not apply to the circumstances of this accident and (2) assuming, arguendo, that it did apply, there is no evidence to suggest that plaintiff's decedent violated the statute.

The term "official traffic control devices" is defined by the Illinois Vehicle Code as all "signs, signals, markings, and devices which conform with the State Manual and not inconsistent with this Act placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic." (Ill. Rev. Stat. 1973, ch. 95½, par. 1—154.) Plaintiff argues that the barricades which blocked the left lane of southbound traffic on Route 45 cannot be considered traffic control devices within the meaning of 11—709(c) because the Department of Transportation's Manual indicates that the primary purpose of barricades is to protect areas behind the barricades and not to channel traffic. This, we believe, is an overly technical explication of the function of barriades. Here it is obvious that the barricades gradually closed off the left lane from traffic. Moreover, Defendant's Exhibit No. 12, which was admitted into evidence, shows that there was a marked "DETOUR" sign 1,000 feet north of the point on the bridge where the barricades began. The use of the sign in conjunction with the barricades which could be seen from where the sign was placed clearly warns approaching drivers that they will have to accommodate a single line of traffic. In any event, both plaintiff's decedent and defendant, being familiar with this area, would have known that traffic on the bridge narrowed to a single lane.

Plaintiff, however, argues that even if the barricades are considered "official traffic control devices directing specific traffic to use a designated lane" the statute does not apply to Snedden because he was in the unobstructed lane of traffic. What plaintiff neglects, however, is that all drivers, including the ones in the free lane, are responsible for knowing that one of the two lanes is closed. Regardless of the propriety of the instruction, we are unable to conclude that plaintiff suffered any prejudice. Defendant did not argue the statute to the jury, and under the facts of this case the only reasonable interpretation the jury could have given this statute was that to avoid an accident a driver in an unobstructed lane of traffic may be required to allow a driver in the closing lane to enter his lane. This interpretation would not appear to be objectionable since it is the unquestioned obligation of every driver to operate his vehicle in such a manner so as to avoid an accident.

## VI.

■■ Under the authority of *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 308 N.E.2d 583, plaintiff, in count II of her second amended complaint filed on September 21, 1977, sought recovery for the conscious pain and suffering Snedden allegedly experienced during the 18-day interval between the accident and his death. Defendant moved for summary judgment in his favor on this count on the ground that there was no evidence of conscious pain. After affidavits and interrogatories were

submitted on this issue, the trial court granted defendant's motion on June 2, 1978. Plaintiff's sixth and final assignment of error is that the trial court improperly granted defendant's motion. In light of our determination that the jury's verdict was not against the manifest weight of the evidence, it is unnecessary to reach this issue. Recovery for conscious pain and suffering would not be appropriate where plaintiff's decedent was not free from contributory negligence.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and DOWNING, JJ., concur.