ALBERT JOSEPH, Plaintiff-Appellee, *v.* SELWYN SCHWARTZ, Defendant-Appellant.—(JOSEPH J. BRENNAN *et al.*, Defendants.)

First District (1st Division)    No. 80-1499

Opinion filed May 18, 1981.—Rehearing denied June 22, 1981.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, and Law Office of Tim J. Harrington, both of Chicago (Stephen R. Swofford and Robert T. Guilfoyle, of counsel), for appellant.

Shaheen, Lundberg & Callahan, of Chicago (Francis P. Smith, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Albert Joseph (plaintiff) brought suit against Joseph Brennan, Edward Baron, Yellow Cab Company, and Selwyn Schwartz (defendant), for personal injuries arising from a three-car collision on the Kennedy Expressway. Defendant was driving the front car. Robert Lynch, passenger, sat on the right side of the front seat. The second car was driven by Joseph Brennan. The third car, a taxicab, was driven by Edward Baron. Plaintiff was a passenger in the cab.

The initial collision was between the front of Brennan's car and the rear of defendant's car. There was another collision between the front of the cab and the rear of Brennan's car. The jury awarded $75,000 to plaintiff from all four defendants. Only defendant appeals.

Plaintiff testified that at 6 or 6:30 p.m. on January 18, 1974, he was a passenger in a Yellow Cab driving east in the right lane of the Kennedy Expressway near Mannheim Road. It was dark, cold, and wet. Traffic was heavy. He was seated on the right-hand side of the back seat of the cab. The light in the cab was on, and plaintiff was reading a newspaper.

Plaintiff first testified the cab "was going fast * * * 50, 55, 58, something." At one time he said it was "45, 50, 55, 52" miles per hour. Later he stated the highest estimate was 60 or 65 miles per hour but not 30, 35, or 40. Plaintiff "noticed a slacking in the speed of the vehicle" and "looked up." Plaintiff testified, "We were coming onto a car. When I looked it was about 80, 90, 100 feet ahead of us." There was a "sharp discelleration [sic] just seconds prior to the impact." In seconds "we hit another car." The lowest speed at the time of impact was 45 miles per hour. Plaintiff stated, "I lurched forward, my face right under my nose hit the * * * sliding window * * *." His "forearms had gone across [his] right knee and [he] was driven up against that wall * * *." Plaintiff stated, "I saw blood and three teeth in the palm of my right hand." His right knee and left elbow were also injured. On cross-examination plaintiff stated, "I was aware of what I considered his high excessive speed in driving even though I didn't say anything."

Defendant was called as a witness under section 60 (Ill. Rev. Stat. 1979, ch. 110, par. 60). Defendant testified that on January 18, 1974, between 6 and 7 p.m., he was driving eastbound on the Kennedy Expressway west of Mannheim Road. He had passed an exit lane which

led to Mannheim Road south. The closest entrance onto the expressway was farther east from Mannheim Road. There were two lanes and defendant was in the right lane. There was traffic to the left and in front of him. The closest car in his lane was "perhaps eight car lengths or so" or about 80 to 100 feet ahead. He was beginning to gain on that car.

Defendant testified he felt two collisions. Before the first impact he was driving at 35 or 40 miles per hour. He saw the brake lights of the car in front of him go on, "so I slightly touched my brake lights to discellerate [sic]." He stated, "I know I had touched my brakes, but I don't know whether my foot was still on the brakes at the time of the accident or the impact." He traveled 30 feet before the impact. When the first collision occurred, he was going 25 or 30 miles per hour. He did not know the distance between his car and the car in front of him, but he did not ".think it was appreciable * * *." After the first collision, he "had the brakes on." A second or two separated the two collisions. At the time of the second collision, his car was going 1 to 10 miles per hour. He went 15 or 20 feet between the collisions. He did not see the car that was in front of him "at any time following the collision."

Brennan's attorney cross-examined defendant. Defendant testified the car in front of him was not stopped and he had no opinion as to how fast that car was going. Defendant's car was not damaged. The front of Brennan's car was not damaged, but the rear fender and trunk were damaged. The front of the cab was severely damaged. Defendant also stated he pushed the brake pedal down about half an inch.

The attorney for Baron and Yellow Cab cross-examined defendant. Defendant testified Robert Lynch was a passenger in defendant's car at the time of the accident. Defendant did not know the posted speed limit but at his deposition he stated he believed it was 50 miles per hour. He would turn off the expressway a "half a mile or so" past the point of the accident. He was about three or four car lengths southeast of the exit ramp. He stated, "[B]etween one to two city blocks farther east of where I applied my brakes was there traffic funneling into the Kennedy." He stated he applied his brakes at one point harder than when he "touched the brakes after the first collision." Then he moved approximately 10 feet until he felt the second impact.

Joseph Brennan was called by plaintiff as a section 60 witness. He testified he was traveling in the right lane next to the exit lane on the Kennedy Expressway. He was going to exit in three-fourths of a mile and was going 40 miles per hour. He looked over to the right for a second. At this point Brennan's car was six car lengths behind defendant's car. He testified, "[T]he brake lights on the car in front of me were on, and I immediately applied my brakes and the car moved along, and the braking action was completed and because of the wet conditions, I slid into the

car in front of me and made contact." Brennan's car traveled six lengths. He stated defendant's brake lights "couldn't have been [on] too long because they weren't on when I was turning to the right, and when I turned back, they were on." He "would think" defendant pulled in front of him while he was looking away. He knew there was a car "quite a distance" behind him.

Brennan also testified, "I wanted the car to stop as quickly as possible, so I put the brakes on. I didn't tap them, I put my foot on the brakes, but not in a wild situation." He said as far as he could remember, defendant's car was not moving when the cars made contact. At the time of impact, Brennan's speed could have been 2 to 5 miles per hour. Defendant was 100 to 300 yards from the entrance ramp and there was traffic coming onto the road. Brennan did not observe any traffic in the left lane attempting to turn in front of defendant. Brennan "was thrown rather violently forward * * *." His "glasses flew off, the ashtray came out of its holder, the lighter came out * * * and there was a great deal of noise, breaking glass, etc." There was no damage to the front of his car. Damage to the rear approximated $1000.

On cross-examination Brennan stated before he glanced to the right, seven car lengths separated the two cars and afterwards, six car lengths separated them. He could not say defendant's car was completely stopped, "but it had to be moving very slowly; I have to assume it was stopped." Brennan stated, "The braking action stopped, but the car continued to move." He also said the highest speed he ever maintained was 40 to 45 miles per hour. He "slid into it" and then he was struck.

Edward Baron was called under section 60. He drove the cab in the right lane. It was raining lightly and the road was wet. The light on in the cab did not interfere with his ability to see through the windshield. When he first saw Brennan's car, Baron was traveling about 40 miles per hour and Brennan about the same. Brennan's car was 100 feet in front of the cab. Defendant was 50 to 75 feet in front of Brennan. Baron saw defendant apply his brakes and start "to slow rapidly." Baron then applied his brakes. One-half second later he saw the brake lights on Brennan's car go on. Brennan's car struck defendant's car and one or two seconds later the cab "skidded and struck Mr. Brennan's car." Defendant did not make an emergency stop. At impact Baron was traveling at 20 or 25 miles per hour. Whether Brennan's car at that time was moving "would be very difficult to tell." The stopping of the cab was influenced by the wetness of the pavement. The hood, grill, and fenders of the cab were damaged and the radiator leaked.

Baron said in cross-examination he knew there was traffic in front of Brennan's car but he did not pay special attention to defendant's car. Traffic was 100 feet in front of Brennan's car before defendant's brake

lights went on. He said, "I saw * * * the space diminishing between his car and the front car and then you could tell it was an impact, but the car just stopped once it hit Mr. Schwartz's car." He saw Brennan's car make an abrupt stop. He said, "I wouldn't know if he had more than one impact." He stated he did not see the two bumpers meet.

Baron also testified there was a car merging onto the Kennedy from the Mannheim entrance ramp that had not been in the normal flow of cars. That car was about 30 feet in front of defendant's car going less than 40 miles per hour. In a deposition he did not recall the distance. It was entering, and part of it was in, the right lane.

Robert Lynch testified he was a passenger in defendant's car. He thought defendant's car attained 30 miles per hour at the highest. "Traffic was ahead and you could see the tail lights [of the car in front]" and the cars were "slowing down due to merging traffic." The collision occurred 200 feet and five seconds later. They were moving 5 or 10 miles per hour at impact. Lynch's knees hit the dashboard.

On cross-examination Lynch testified defendant's car was about 150 feet from where a car could enter the lane. There was a car 30 or 40 feet in front of defendant's car which had been there "maybe 10 seconds." Lynch "only really started to notice the car when it started to brake." That car was 10 feet in front of defendant's car at impact. He could not remember whether it had pulled in front of defendant's car from a lane. Defendant did not make an abrupt stop.

In his case in chief, defendant stated eight car lengths separated his car and the car in front of him. That would be about 100 feet. His speed at that time was 35 miles per hour. On cross-examination he stated at the time of contact he was 10 feet behind the car in front of him.

Officer Lee Klisnick testified he went to the scene and made a report. The accident took place 90 feet east of Mannheim. There was a "feeder ramp" 100 feet away. Weather was fog or mist. The pavement was wet. Defendant stated he was moving at the time of the accident and he said his speed was 25 to 30 miles per hour. Baron said his speed was 35 miles per hour. No one told the officer a vehicle came to an abrupt stop. If one were to look, it would be possible to see cars one-fourth mile northwest coming onto the expressway.

■■ In every situation in which human beings are witnesses, unintentional discrepancies in the testimony are inevitable. This is particularly true in the case of automobile collisions. No person can state the speed of a moving object or distances between moving objects with any degree of certainty. This condition exists in every contested case as it does in the case at bar. The condition is accentuated when a witness is cross-examined by several attorneys. However, a just and proper disposition of a contested case cannot be reached on the basis of these discrepancies

alone. The result should and does depend upon a proper and impartial consideration of all of the testimony of every witness.

■■ Defendant first contends he was not negligent and any negligence of his was not the proximate cause of the accident. Defendant urges the trial court should have entered a directed verdict or judgment *n.o.v.* under *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, because all the evidence, viewed in its aspect most favorable to the plaintiff, so overwhelmingly favored defendant that no contrary verdict based on that evidence could ever stand. *Bauer v. Johnson* (1980), 79 Ill. 2d 324, 332, 403 N.E.2d 237; *Hayes v. Alsburg* (1978), 72 Ill. 2d 560, 566, 382 N.E.2d 239; see *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 15, 413 N.E.2d 1242.

■■ A motorist must operate his vehicle so that he does not endanger others rightfully on the highway, and if he fails to do so, he is liable for injuries proximately caused by his negligence. (*Glenn v. Mosley* (1976), 39 Ill. App. 3d 172, 175-76, 350 N.E.2d 219. See *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554-55, 328 N.E.2d 538; *Leonard v. Pacific Intermountain Express Co.* (1976), 37 Ill. App. 3d 995, 1004, 347 N.E.2d 359, *appeal denied* (1976), 63 Ill. 2d 557.) As stated by the supreme court in *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 395, 356 N.E.2d 93, quoting *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380, 50 N.E.2d 497:

> "The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act."

In our opinion all of the evidence so overwhelmingly favors the defendant that we are impelled to conclude defendant was in the exercise of due care at the time of the accident. Considering the matter in the light most favorable to plaintiff, we find that prior to the occurrence, defendant was traveling from 30 to 40 miles per hour and was somewhere between 50 and 100 feet in front of Brennan's car. In recognition of moderate to heavy traffic and a wet pavement, defendant was traveling well under the speed limit. The car in front of him was 30 to 100 feet ahead. According to Baron, defendant applied his brakes and started "to slow rapidly." Defendant traveled 30 feet after he put his brakes on and before impact. There was no abrupt or "emergency" stop. Brennan, also traveling about 40 miles per hour, applied his brakes, skidded on the wet pavement for six car lengths, and struck defendant's car. This impact caused no damage to defendant's car or to the front of Brennan's car. Brennan said he put his foot on the brakes, "but not in a wild situation."

Baron, 100 feet behind Brennan, also applied the brakes, skidded, and collided with Brennan. This impact caused nearly $1000 in damage to the rear portion of Brennan's car. The front of the cab was extensively damaged. There was testimony that Baron had previously been traveling somewhere between 40 and 65 miles per hour.

We fail to see what more defendant could have done under the circumstances to avoid an accident. He was traveling at a safe rate of speed at a safe distance behind other cars in rather heavy rush-hour traffic. Although Brennan and Baron testified their cars skidded on the wet pavement, there is no contention defendant skidded. We find he was in sufficient control of his car at all times.

Counsel for plaintiff has stressed alleged discrepancies between the testimony of defendant and that of defendant's passenger. However, as above pointed out, discrepancies of this nature do not themselves create liability or negate proof of due care. The outcome here depends upon all of the evidence properly construed under *Pedrick* and other pertinent legal principles.

■■ Ordinarily, issues of proximate cause are questions of fact for a jury to decide. (*French v. City of Springfield* (1976), 65 Ill. 2d 74, 79, 357 N.E.2d 438.) But when a jury returns a verdict that is not supported by the evidence, it is the duty of the trial court and this court to act as a check on the jury and reject the verdict. (*Gullberg v. Blue* (1980), 85 Ill. App. 3d 389, 392, 406 N.E.2d 927; *Burroughs v. McGinness* (1978), 63 Ill. App. 3d 664, 667, 380 N.E.2d 37.) These principles are applicable here so as to require a reversal of the judgment against defendant Schwartz.

Furthermore, plaintiff's amended complaint is not supported by the evidence. Plaintiff first alleges defendant failed to keep a proper and sufficient lookout. Although a motorist approaching from the rear must maintain a proper lookout for traffic ahead (*Zaeh v. Huenke* (1979), 70 Ill. App. 3d 39, 41, 388 N.E.2d 434), there is nothing in the record that indicates defendant was negligent in this regard. With regard to the car in front of defendant, plaintiff asserts, "this is not a case where a driver was forced to stop to avoid an obstruction, but a case where the leading driver slowed rapidly but unnecessarily." On the contrary, the evidence shows affirmatively that defendant did keep a proper lookout. As soon as the car ahead of defendant merged onto the highway, defendant applied his brakes but did not stop suddenly.

Plaintiff also alleges defendant failed to keep his car under proper and sufficient control and drove at an unreasonable speed. As above shown, the evidence establishes plaintiff demonstrated due care and common sense when he kept his car below the speed limit under these conditions.

Plaintiff also alleged defendant should have given an appropriate

signal to warn the driver behind him such as flashing his lights several times. In this case, as the evidence shows, defendant activated his brake lights when he stepped on the brake. We find this appropriate and sufficient. We are not aware of any legal authority which requires a motorist to signal a stop by means other than the activation of rear stop lights by depression of the brake pedal.

The cases cited by plaintiff in this regard are inapposite. In *Mernick v. Chiodini* (1956), 12 Ill. App. 2d 249, 139 N.E.2d 784, the evidence showed that defendant made a sudden decrease in speed. In the instant case, although defendant reduced his speed, he did not make an abrupt or emergency stop. In *Leonard*, 37 Ill. App. 3d 995, the highway had a posted minimum speed limit of 45 miles per hour. The driver of the front car there either slowed down well below the minimum speed or stopped entirely before an exit. He then sped up and again stopped or slowed down at the next exit. These tactics were largely responsible for the occurrence. No such situation exists in the instant case. In *Zerbenski v. Tagliarino* (1978), 67 Ill. App. 3d 166, 170, 384 N.E.2d 753, this court noted that the defendant "slammed on his brakes."

■■ The physical facts of this occurrence lead unerringly to the conclusion that defendant was not guilty of any negligence which was the proximate cause of the accident. Defendant applied his brakes without making an emergency stop. This created no problem for the vehicle which followed him. Brennan, driving the second car, was in full control of the situation and slowed his car so that the eventual contact between cars one and two was negligible and caused no damage. On the contrary, the driver of the third automobile saw the brake lights on defendant's car and on Brennan's car. The driver of the third car conceded that when his vehicle collided with the second car, he was moving at 20 or 25 miles per hour. The natural result was a forceful impact which damaged cars two and three and which caused plaintiff's injuries.

Our careful review of this entire record impels us to the conclusion that defendant was not guilty of negligence and no conduct of the defendant was the proximate cause of the injury.

Accordingly, the judgment in favor of plaintiff and against defendant Selwyn Schwartz is reversed. In view of this disposition, we find it unnecessary to consider the remaining contentions advanced by defendant.

Judgment against defendant Selwyn Schwartz reversed.

CAMPBELL, P. J., and O'CONNOR, J., concur.