KENNETH W. ZIEKERT, Plaintiff-Appellee, v. DAVID COX, Defendant-Appellant.

First District (3rd Division)   No. 1—88—2313

Opinion filed May 3, 1989.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo and Christine L. Olson, of counsel), for appellant.

Lane & Munday, of Chicago (Kathleen Reynolds and John J. Munday, of counsel), for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Kenneth Ziekert, sued defendant, David Cox, for personal injuries sustained when defendant's automobile rear-ended plaintiff's automobile on the Kennedy expressway. At the close of all the evidence, the trial court granted plaintiff directed verdicts finding that he had not been contributorily negligent and that defendant had been negligent, as a matter of law. Thereafter, the jury awarded plaintiff $96,500 in damages. Defendant appeals.

At trial, plaintiff testified that he left his office in downtown Chicago at approximately 5:30 p.m. on December 2, 1977, a weekday, and drove to the Kennedy expressway, which he normally travelled on his way home. When plaintiff exited the westbound express lanes, traffic came to a stop at the intersection of the Kennedy and Edens expressways. Plaintiff "came to a stop because of traffic stopping up ahead." Plaintiff described his stop as "gradual" and "complete." After stopping his vehicle, plaintiff reached to turn the volume on his radio down. While so doing, plaintiff's vehicle was struck from behind. Plaintiff was "violently thrown backwards" in his seat, felt as if he "was going backward over the *** front seat" and "was immediately disoriented" for about a minute or two. After the collision, defendant told plaintiff that he had been "looking over his shoulder to learn if traffic was clear so he could pass" plaintiff's stopped vehicle.

Plaintiff's expert witness, Dr. John Shea, a neurosurgeon, testified through an evidence deposition. Dr. Shea reviewed the records of plaintiff's treatment for health problems he experienced after the accident. Those records consisted of plaintiff's treatment at the emergency room of Sherman Hospital in Elgin, Illinois, and records of Drs. Lea, Mansfield and Campbell, the latter of the Mayo Clinic in Rochester, Minnesota. He also reviewed the records of plaintiff's examination by Dr. William Grimm, a neuropsychologist to whom Dr. Shea referred plaintiff, and the records of plaintiff's ophthalmological examination. Dr. Shea stated that these are the types of records normally relied upon by experts in the field. Dr. Shea also examined plaintiff in October 1987. Dr. Shea testified extensively regarding, *inter alia*, the causes and symptoms of traumatic brain injury in general and pseudotumor cerebri in particular, as well as the methods of diagnosis of the latter. After reviewing the plaintiff's medical records, Dr. Shea stated his opinion, based on a reasonable degree of medical

and neurological certainty, that plaintiff had a pseudotumor cerebri which was caused by a traumatic occlusion or blockage of the right sinus. Finally, Dr. Shea testified that after examining plaintiff and reviewing the report of Dr. Grimm, it was his opinion that plaintiff's pseudotumor cerebri was proximately caused by the accident with defendant.

Over defendant's objection based on plaintiff's failure to disclose his identity until the day before the trial started, the trial court allowed Dr. Grimm to testify for plaintiff. Dr. Grimm conducted a mental status examination of plaintiff to determine his orientation and performed a series of tests on plaintiff to determine whether he had any cognitive difficulties. As a result of his examination and tests, Dr. Grimm determined that plaintiff exhibited mild difficulties in concentration and spatial perception. He also concluded that plaintiff was experiencing an enhanced sense of stress and anxiety since his accident. At the end of his examination, Dr. Grimm recommended to plaintiff "learning a new set of skills" to help him deal with daily stresses more effectively.

Defendant testified that the accident with plaintiff occurred on the Kennedy expressway beyond both the merger of the express and local lanes and the separation of the Kennedy and Edens expressways. It occurred at about 8 p.m. when it was dark and the traffic was heavy but was the "usual rush hour traffic." At that time, defendant "went to change lanes." In so doing, he turned on his turn signal, looked into his rearview mirror and turned his head over his right shoulder to check his blind spot. By the time he looked forward again, defendant saw two brakelights on, realized that traffic was stopped ahead of him, and collided into the rear of plaintiff's car.

For defendant, Dr. James Mansfield, a neurosurgeon who treated plaintiff in 1981 and the first to diagnose plaintiff's condition as a pseudotumor cerebri, testified that the collision did not cause plaintiff's condition. Defendant's expert, Dr. Marshall Matz, also a neurosurgeon, agreed with Dr. Campbell's conclusion that the cause of plaintiff's sinus occlusion, which, in turn, caused the pseudotumor, was unknown. However, Dr. Matz did state that the collision with defendant did not cause plaintiff to develop the sinus occlusion.

OPINION

On appeal, defendant first contends the trial court erred in denying him a judgment *n.o.v.* because plaintiff failed to prove that defendant proximately caused his injuries. Defendant asserts that Dr. Shea's testimony that plaintiff's pseudotumor cerebri was caused by

the collision was outweighed by that of Drs. Mansfield and Matz.

■ A judgment *n.o.v.* is proper only where all the evidence, when viewed in its aspect most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 299 N.E.2d 504.

■ Contrary to defendant's assertion, Dr. Shea's testimony was sufficient to sustain the verdict for plaintiff. An expert opinion, held to a reasonable degree of medical certainty, provides an adequate basis for a jury finding that causation was proved by a preponderance of the evidence. *Witherell v. Weimer* (1987), 118 Ill. 2d 321, 337, 515 N.E.2d 68; *Swaw v. Klompien* (1988), 168 Ill. App. 3d 705, 714, 522 N.E.2d 1267.

■ In this regard, the weight to be given Dr. Shea's testimony was not lessened by his statement that the most common cause of sinus occlusion was a mastoid infection. The fact that plaintiff did not have a mastoid infection supported, rather than negated, the conclusion that the collision with defendant was the cause of plaintiff's condition. Dr. Shea also testified that 90% to 95% of all pseudotumors cerebri were nontraumatic spontaneous events, that most cases of pseudotumor had nothing to do with sinus occlusion and that plaintiff had gone the longest he had seen between a traumatic event and onset of pseudotumor cerebri. These concessions by Dr. Shea did not require the jury to discount his testimony that, to a reasonable degree of medical certainty, plaintiff's condition was caused by the collision with defendant. The relative weight and sufficiency of expert testimony is peculiarly within the province of the jury. *Fuery v. Rego Co.* (1979), 71 Ill. App. 3d 739, 745, 390 N.E.2d 97.

■ In this same vein, the conflict between Dr. Shea and Drs. Mansfield and Matz as to the ultimate cause of plaintiff's condition did not require the jury to give more weight to the testimony of the latter. A disagreement among medical authorities as to cause and effect does not preclude a verdict for the plaintiff. (*Witherell*, 118 Ill. 2d 321, 515 N.E.2d 68.) In other words, the jury was free to believe Dr. Shea's testimony over that of defendant's witnesses. (See *Trower v. Jones* (1986), 149 Ill. App. 3d 705, 721, 500 N.E.2d 1134, *rev'd on other grounds* (1988), 121 Ill. 2d 211, 520 N.E.2d 297.) After reviewing the record, we cannot say that the evidence in this case satisfies the *Pedrick* standard.

Defendant next contends the trial court erred in denying him a new trial based on several alleged errors.

Defendant first asserts that the trial court erred in failing to ex-

clude Dr. Grimm as an expert witness under Supreme Court Rule 220 (107 Ill. 2d R. 220). Plaintiff defends the trial court's decision on the grounds, *inter alia*, that his trial counsel did not know that he had been examined by Dr. Grimm until the week before the trial started and that she immediately turned over his report to defense counsel.

■■ ■ Rule 220 requires the pretrial disclosure of expert witnesses, *i.e.*, persons who, because of education, training or experience, possess knowledge of a specialized nature beyond that of the average person on a material factual matter and who are retained to render an opinion at trial. (107 Ill. 2d R. 220.) Contrary to defendant's assertion, there is nothing in the record to indicate that plaintiff retained Dr. Grimm to testify as an expert witness at trial. Moreover, he did not, as an expert typically does, render any opinions regarding any matters in issue. For that reason, defendant's reliance on *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 511 N.E.2d 974, holding that the testimony of an undisputed expert witness should have been barred due to the plaintiff's violation of Rule 220, is misplaced.

■ Moreover, we need not determine that Dr. Grimm was excluded from the disclosure requirements of Rule 220 by virtue of being a treating physician in order to find that there was no violation of that rule. Rule 220 applies only to expert witnesses. The pretrial disclosure of all other witnesses, whether treating physicians or not, is governed by Supreme Court Rule 219. (107 Ill. 2d R. 219.) That rule vests a court with discretion to determine both whether to impose sanctions for a party's noncompliance with discovery rules and orders and, if it determines to do so, the appropriate sanction therefor. *Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 531, 504 N.E.2d 772.

■ However, defendant also contends that the trial court erred in failing to exclude Dr. Grimm's testimony under Supreme Court Rule 219. Defendant notes that plaintiff did not disclose Grimm's report to Dr. Shea in his answer to defendant's discovery request for all data on plaintiff's condition although plaintiff had seen Grimm and Grimm's report was dated prior to that answer.

We find no abuse of the trial court's discretion under Rule 219 in its allowing Dr. Grimm to testify without imposing any sanction upon plaintiff. There is nothing in the record to refute plaintiff's trial counsel's contentions that she was unaware that plaintiff had seen Dr. Grimm and that he had made a report to Dr. Shea until the week before trial and that she immediately disclosed the report to defense counsel. Moreover, the trial court offered defense counsel the opportunity to depose Dr. Grimm before he testified for the express purpose

of determining whether there would be anything in his testimony which would be a "disqualifying factor," but defense counsel declined.

In *Frozen Food Express v. Modern Truck Lines, Inc.* (1967), 79 Ill. App. 2d 84, 223 N.E.2d 275, the defendants contended the trial court erred in allowing the testimony of one of plaintiff's witnesses. Plaintiff disclosed the witness to defendant the Saturday preceding the first day of trial. In rejecting the contention, the court stated:

> "The defendants knew on the Saturday preceding trial, that Herod might be called as a witness. Admittedly, little could be done on that day, or on Easter Sunday, in the way of interrogation of Herod, or any investigation of his connection with the case. The record shows that defendants announced "Ready for trial" on Monday morning. They made no request for continuance, and did not advise the court of what had transpired. Had the court been informed that defendants desired to take Herod's discovery deposition, and would then require some additional time to investigate the matters about which he was deposed, a refusal to continue the case for a reasonable time for these purposes would have presented for review, an entirely different question, than is presently before us. *** A party, in these circumstances, should ascertain the nature of the testimony which the witness will give, and may not, safely, answer ready for trial, and gamble on the trial court's excluding the witness." *Frozen Food Express*, 79 Ill. App. 2d at 92.

We believe that defendant here, like the defendants in *Frozen Food Express*, could not merely decline an opportunity to depose Dr. Grimm, gamble that the court would exclude his testimony and, when that gamble failed, appeal on the grounds that the trial court abused its discretion. In this regard, we find the *Phelps* court's disapproval of the procedure of adjourning the trial, while an undisclosed expert was deposed, not to be a consideration here.

*Dempski v. Dempski* (1963), 27 Ill. 2d 69, 187 N.E.2d 734, and *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 419 N.E.2d 578, cited by defendant, do not require a contrary conclusion. In *Dempski*, the defendants offered the testimony of three witnesses at trial not previously disclosed to the plaintiff. The court stated that the determination whether there was a wrongful or inexcusable noncompliance with discovery was, in the first instance, the trial court's responsibility and that, from the record before it, it did not appear that it had abused its discretion. (*Dempski*, 27 Ill. 2d at 77.) In *Jensen*, the court noted that surprise to the opponent, whether the omission was intentional or inadvertent, the nature of the witness'

testimony, timeliness of an objection, the opponent's opportunity to depose the witness before trial and prejudice to the opponent by virtue of the testimony were factors in determining whether an appropriate sanction had been invoked for failure to disclose a witness. Similarly to *Dempski,* however, the *Jensen* court merely concluded that the trial court had not abused its discretion in excluding the testimony of six defense witnesses not previously disclosed to the plaintiff. *Jensen,* 94 Ill. App. 3d at 928-29.

This case is in keeping with *Dempski* and *Jensen.* That is, we cannot say, in view of defendant's failure to seek some relief other than exclusion of his testimony, that the trial court abused its discretion in *not* imposing any sanction upon plaintiff for violating Rule 219 by failing to disclose Dr. Grimm prior to trial.

Defendant also asserts that the trial court erred in directing a verdict for plaintiff finding defendant negligent as a matter of law. Defendant notes that a rear-end collision does not automatically give rise to an inference that the driver of the trailing car was negligent as a matter of law. *Burgdorff v. IBM, Inc.* (1979), 74 Ill. App. 3d 158, 392 N.E.2d 183.

The rule articulated in *Burgdorff* did not preclude the trial court from concluding that the evidence before the jury, when viewed in the light most favorable to defendant, so overwhelmingly revealed his negligence as a matter of law that no contrary verdict could ever stand and, therefore, directing a verdict for plaintiff on that issue. *Pedrick,* 37 Ill. 2d 494, 299 N.E.2d 504.

A driver, such as defendant, has a duty to maintain a sufficient distance from the vehicle in front in order to stop or slow down (*Hickox v. Erwin* (1981), 101 Ill. App. 3d 585, 428 N.E.2d 520), to maintain a safe lookout for traffic ahead (*Hickox,* 101 Ill. App. 3d 585, 428 N.E.2d 520; *Joseph v. Schwartz* (1981), 96 Ill. App. 3d 749, 422 N.E.2d 35; *Snedden v. Lavenka* (1981), 92 Ill. App. 3d 979, 416 N.E.2d 1097) in order to avoid colliding with it (*Droese v. Fleming* (1981), 93 Ill. App. 3d 781, 417 N.E.2d 855), and to take into account the prospect of having to suddenly stop (*Droese,* 93 Ill. App. 3d 781, 417 N.E.2d 855; *Snedden,* 92 Ill. App. 3d 979, 416 N.E.2d 1097) or slow his vehicle (*Gullberg v. Blue* (1980), 85 Ill. App. 3d 389, 406 N.E.2d 927). Thus, while a trial court cannot hold a driver, such as defendant, negligent as a matter of law by virtue of a rear-end collision alone, nothing prohibits it from taking the issue of his negligence away from the jury where the evidence overwhelmingly reveals his breach of the foregoing duties. See, *e.g., Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 449 N.E.2d 211.

■■■ We agree with the trial court that there was no evidence that plaintiff had been contributorily negligent. More importantly, we agree with the trial court that the evidence was such that no other conclusion could stand other than that defendant breached the duties of a following driver and was, therefore, negligent as a matter of law. "Unlike the situation in *Burgdorff*, there was no evidence presented tending to show that defendant was in a helpless or an unavoidable situation." (*Korpalski*, 114 Ill. App. 3d at 566.) As otherwise stated, "[t]he evidence fails to disclose any intervening parties, events or factors which would support a finding that *** defendant was not the proximate cause of the collision." (*Gullberg v. Blue* (1980), 85 Ill. App. 3d 389, 392, 406 N.E.2d 927.) As such, the court did not err in directing a verdict for plaintiff on the issue of defendant's negligence.

Defendant next asserts the trial court erred in allowing Dr. Shea to read into evidence the medical reports on which he based his opinions at his deposition. In support, defendant cites the rule that it is impermissible for an expert to read from medical records prepared by other physicians who do not authenticate the records at trial because, under such circumstances, the records constitute hearsay.

■■■ Preliminarily, we note that the cases cited by defendant do not involve an expert's reading into evidence the contents of medical records and, therefore, do not stand for the rule upon which defendant relies. More importantly, it is well settled that, not only may experts consider medical records commonly relied upon by members of the medical profession in forming their opinions, but that they may testify as to the contents of those records as well. (*People v. Anderson* (1986), 113 Ill. 2d 1, 495 N.E.2d 485, *cert. denied* (1986), 479 U.S. 1012, 93 L. Ed. 2d 713, 107 S. Ct. 658; *Lovelace v. Four Lakes Development Co.* (1988), 170 Ill. App. 3d 378, 523 N.E.2d 1335; *In re Scruggs* (1986), 151 Ill. App. 3d 260, 502 N.E.2d 1108; *Mayer v. Baisier* (1986), 147 Ill. App. 3d 150, 497 N.E.2d 827; *Henry v. Brenner* (1985), 138 Ill. App. 3d 609, 486 N.E.2d 934.) This rule recognizes that the records from which an expert reads are admitted, not to prove the truth of the matter asserted therein, but for the limited purpose of explaining the expert's testimony. (*People v. Anderson* (1986), 113 Ill. 2d 1, 495 N.E.2d 485; *Lovelace v. Four Lakes Development Co.* (1988), 170 Ill. App. 3d 378, 523 N.E.2d 1335.) The only limitations on the testimony allowed under this rule are that the expert must reasonably rely on the records and that its probative value must outweigh any prejudicial impact or tendency to create confusion. (*Anderson*, 113 Ill. 2d 1, 495 N.E.2d 485; *Lovelace*, 170 Ill. App. 3d 378, 523 N.E.2d 1335.) As defendant does not contend that these limi-

tations were violated here, the trial court did not err in allowing Dr. Shea to read from the medical records of plaintiff's treating physicians.

Defendant next contends that he is also entitled to a new trial because the jury verdict is against the manifest weight of the evidence, plaintiff having failed to prove that any negligence on defendant's part proximately caused his injuries. The standard to obtain a new trial is less demanding than that to obtain a judgment *n.o.v.* Nonetheless, our prior rejection of defendant's argument that plaintiff failed to prove proximate cause, in connection with defendant's request for a judgment *n.o.v.*, also defeats defendant's right to a new trial on that ground.

Defendant lastly contends that he is entitled to a new trial on the issue of damages or a remittitur because the plaintiff's evidence does not support the jury award of $96,500. In so arguing, defendant focuses on the limited medical expenses which plaintiff incurred. He also focuses on the fact that before 1981, plaintiff complained only of neck and back pain and only thereafter complained of other health problems.

The trial court instructed the jury that, in deciding the amount of the award to plaintiff, it was to consider the nature and extent of his injury, including: (1) the resulting disability; (2) the resulting pain and suffering; and (3) the reasonable expense of necessary medical care, treatment and services received.

Contrary to defendant's implication in focusing upon plaintiff's medical expenses, the amount of compensation for plaintiff's disability and pain and suffering was not necessarily related to the amount of medical expenses incurred and plaintiff's medical bills were not conclusive as to the size of the jury's award. *Ludgin v. John Hancock Mutual Life Insurance Co.* (1986), 145 Ill. App. 3d 703, 710, 495 N.E.2d 1237; *Henry v. St. John's Hospital* (1987), 159 Ill. App. 3d 725, 735, 512 N.E.2d 1244.

In view of plaintiff's evidence regarding the effects of pseudotumor cerebri and the indeterminate length of time which those effects could last and the elements of damages the jury was allowed to consider, an award of $96,500 is not so large that it indicates passion or prejudice on the part of the jury (*Jones v. Karraker* (1983), 98 Ill. 2d 487, 492, 457 N.E.2d 23) or falls outside the limits of fair and reasonable compensation or shocks the judicial conscience (*LeMaster v. Chicago Rock Island & Pacific R.R. Co.* (1976), 35 Ill. App. 3d 1001, 1030, 343 N.E.2d 65). As such, defendant is entitled to neither a new trial on damages alone nor a remittitur.

For all of the foregoing reasons, the judgment appealed from is affirmed in its entirety.

Affirmed.

WHITE and CERDA, JJ., concur.