JULIO CORTES *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. RYDER TRUCK RENTAL, INC., *et al.*, Defendants-Appellants and Cross-Appellees.

First District (1st Division)   No. 1—89—1634

Opinion filed May 6, 1991.—Modified on denial of rehearing November 4, 1991.

Lord, Bissell & Brook and McKenna, Storer, Rowe, White & Farrug, both of Chicago, and Borgelt, Powell, Peterson & Frauen, of Milwaukee, Wisconsin (R. Bruce Duffield, Hugh C. Griffin, Richard E. Mueller, Lyndon C. Molzahn, and Brian D. Baird, of counsel), for appellant.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Michael K. Demetrio, and David A. Novoselsky, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Julio Cortes was severely injured in a collision between the car in which he was a passenger and a Ryder Truck, operated by an employee of A&H, Inc. In actions for negligence against Ryder and A&H, a directed verdict was entered against A&H, and a jury

awarded damages of $15,261,000. The jury found Ryder not liable, but the trial court imposed liability on it of $14,511,000 pursuant to the Wisconsin financial responsibility statute.

On December 4, 1986, A&H, a Wisconsin trucking company that hauls throughout the United States, rented a semi tractor from the Ryder Truck Rental facility in Madison, Wisconsin. The rental contract required A&H either to agree to be covered under a $2 million liability insurance policy carried by Ryder, or provide its own liability insurance in the amount of no less than $100,000 per person and $300,000 per occurrence. A&H opted for its own policy, which provided $750,000 in coverage.

On December 27, 1986, Richard Hamlett, an A&H employee, was driving the Ryder tractor on Interstate 80 in Indiana. At about 10:30 p.m., Hamlett collided with a car in which Julio Cortes was a passenger. Mr. Hamlett was familiar with the road, and at the time of the collision, rested and alert. The truck was in good operating condition. Although it was dark, and there was no artificial lighting at the scene of the collision, visibility was good.

At trial Mr. Hamlett testified that he had first seen the Cortes car from about a quarter mile behind. As Mr. Hamlett drove under an overpass at about 50 to 55 miles per hour, and around a gradual curve, he judged the Cortes car to be travelling at about the same speed. Mr. Hamlett did not realize he was gaining rapidly until he was about 600 to 800 feet from the Cortes car. Hamlett checked his mirror to make a lane change and applied the brakes, but suddenly hit the car from behind. The Cortes car, driven by Ms. Alva Cortes, was travelling at about 40 miles per hour at the time of the collision because they had stopped to change drivers and had just returned to the highway a few minutes before.

Julio Cortes, who was in the back seat of the car, was severely injured. Paramedics removed Mr. Cortes from the wreckage, and took him to Goshen General Hospital, where he was diagnosed to have the following injuries: bloody vomitus, shock, internal injuries, head injuries, multiple rib fractures, multiple fractures to the jaw, and a spinal fracture.

In emergency exploratory surgery, Mr. Cortes' shattered spleen was removed. He was then transferred to Rush-Presbyterian-St. Luke's Medical Center in Chicago, where he received two more operations, one to stabilize his fractured spine, and one on the jaw, which revealed that the mental nerve, which controls certain facial muscles, had been severed by the bone fractures. On February 10, 1987, Mr.

Cortes was transferred to the Rehabilitation Institute of Chicago, where he received training to adapt to life in a wheelchair.

As a result of the injuries, Mr. Cortes is a paraplegic. He has no bladder or bowel control, must catheterize himself six times a day, and manually stimulate his bowel once a day. He is susceptible to bladder and kidney stones and bladder, urinary, and pulmonary infections, exacerbated by the lack of spleen. Mr. Cortes is also susceptible to skin problems and bed sores due to lack of feeling, and must perform pressure relief exercises 45 times a day. While Mr. Cortes has no feeling from the nipple line down, above that line he experiences constant pain. Mr. Cortes is physically incapable of engaging in normal sexual relations with his wife, and various mechanical aids have been disappointing.

Before the collision, Mr. Cortes was academic coordinator of special services at Northeastern University. He returned to work in April 1988, but university doctors will allow him to work half of his previous schedule, at half his former salary.

On February 17, 1987, Mr. and Mrs. Cortes sued A&H and Ryder for personal injuries and loss of consortium, based on Hamlett's negligent operation of the Ryder tractor. Ryder's liability was based on an agent-principal relationship between A&H and Ryder.

Applying Indiana law, the trial court entered a directed verdict of liability against A&H. The jury found Ryder not liable and awarded Mr. and Mrs. Cortes $15,261,000 in damages.

During the pendency of the trial, Mr. and Mrs. Cortes had amended their complaint to add count II, alleging Ryder's liability for the full amount of damages under the Wisconsin financial responsibility statute (Wis. Stat. §344.51 (1985).) The trial court denied Mr. and Mrs. Cortes' post-trial motion for judgment *n.o.v.* with respect to Ryder's liability under the principal-agent theory, and denied Ryder's motion to dismiss count II of the amended complaint. A&H's insurer tendered the full amount of its insurance, $750,000 to Mr. and Mrs. Cortes. A&H then filed for bankruptcy. Ryder answered count II of the amended complaint, and on cross-motions for summary judgment, the trial court ruled in favor of Mr. and Mrs. Cortes and against Ryder for the amount of damages exceeding the $750,000 tendered by A&H.

Ryder challenges the finding of liability under Wisconsin law, the directed verdict on A&H's liability, and the amount of damages. Mr. and Mrs. Cortes cross-appeal the verdict that Ryder was not liable as A&H's principal. We first address the directed verdict, damages, and cross-appeal.

The trial court entered a directed verdict, finding A&H liable to Mr. and Mrs. Cortes. A&H is not a party to this appeal, but the directed verdict is properly challenged by Ryder, as a party may challenge any judgment adverse to its interests (see *St. Mary of Nazareth Hospital v. Kuczaj* (1988), 174 Ill. App. 3d 268, 528 N.E.2d 290), and Ryder's liability was predicated on A&H's liability. The directed verdict, however, was correct.

■■ ■ The driver of the trailing vehicle in a rear-end collision is not negligent as a matter of law, but the trial court may take the issue from a jury where the evidence overwhelmingly shows the driver of the trailing vehicle breached his duty to prevent a collision with vehicles in front of him. (*Ziekert v. Cox* (1989), 182 Ill. App. 3d 926, 538 N.E.2d 751.) Here, on a night with good visibility, on a clear road with a vehicle in good operating condition, Mr. Hamlett, who was alert and familiar with the highway, saw the Cortes car from as far as 600 to 800 feet, but nevertheless collided with it. The Cortes car was moving slowly, but that neither negated Mr. Hamlett's duty to prevent the collision, nor contributed to the collision, given Mr. Hamlett's ability to spot the vehicle with ample time and distance to adjust. The record supports the directed verdict.

■■ The record also supports the damages award. Mr. and Mrs. Cortes presented uncontradicted evidence of the extent and severity of Mr. Cortes' injuries, the extent of necessary treatment and rehabilitative therapy, and the profound and permanent impact of those injuries on Mr. Cortes and his family, physically, psychologically, and emotionally. The damages sought here were compensatory only, and rather than indicating a shockingly excessive award, the evidence supported the jury's determination.

■■ On cross-appeal, Mr. and Mrs. Cortes argue that the verdict finding Ryder not liable under the principal-agent theory was contrary to the manifest weight of the evidence. Ryder owned the vehicle and exercised control over its maintenance and safety, but Ryder exercised no control over A&H's use of the vehicle as long as A&H operated the vehicle in a manner consistent with the terms of the rental agreement. The terms of the agreement, generally, provided only that the vehicle be operated in a safe and lawful manner by the renter's employees, in the scope of their employment, and for its intended use of towing trailers of a specified design and weight. Further, when the collision happened, A&H was using the tractor to haul cheese; Mr. and Mrs. Cortes can make no legitimate argument that A&H was serving Ryder's purposes. The record supports the finding that the rental agreement between Ryder and A&H did not constitute a princi-

pal-agent relationship. The verdict was correct and shall not be disturbed.

■ Mr. and Mrs. Cortes further argue that Ryder was allowed to introduce improper evidence, which invaded the province of the jury by presenting an ultimate conclusion that A&H was not an agent of Ryder. The evidence alleged as improper, however, was a paragraph from the rental agreement reciting that the lessee was not an agent of the lessor. That recital was not "an ultimate conclusion of law," but rather, relevant to show the parties' intent, and admission, that they not function as principal and agent. The evidence was proper and properly admitted.

■ The remaining issues concern Ryder's liability under the Wisconsin financial responsibility statute (Wis. Stat. §344.51 (1985)), and the extent of that liability. Section 344.51 provides:

> "(1) No person may for compensation rent any motor vehicle to be operated by or with the consent of the person renting the vehicle unless there is filed with the department a good and sufficient bond or policy of insurance issued by an insurer authorized to do an automobile liability insurance or surety business in this state. The bond, policy or certificate shall provide that the insurer which issued it will be liable for damages caused by the negligent operation of the motor vehicle in the amounts set forth in s[ection] 344.01(2)(d).
>
> (2) Any person failing to comply with this section is directly liable for all damages caused by the negligence of the person operating such rented vehicle to the extent that such liability could have been established if this section had been complied with."

The required amounts of insurance set forth in section 344.01(2)(d) in 1986 were $25,000 per person and $50,000 per accident.

We initially find that the trial court correctly applied Wisconsin law. Although choice of law principles might indicate that Illinois or Indiana law applied to the tort of negligence committed by A&H, Ryder's liability was not based on negligence, directly or vicariously. Ryder's liability was based on a public policy to compensate an injured plaintiff. Ryder's liability to Mr. and Mrs. Cortes arose, therefore, through its contractual relationship as lessor to A&H, the negligent lessee. That contractual relationship was created by the rental agreement between Ryder and A&H, executed in Wisconsin. Clearly, Wisconsin had the most significant contacts to the lease agreement between Ryder and A&H, and the greatest interest in the contractual relationship.

■ Mr. and Mrs. Cortes alleged liability under section 344.51. (Wis. Stat. §344.51 (1985).) Section 344.51 was interpreted by the court of appeals of Wisconsin in *Germanotta v. National Indemnity Co.* (1984), 119 Wis. 2d 293, 349 N.W.2d 733, which held that under section 344.51, the lessor of a vehicle was financially responsible to an injured plaintiff where a negligent lessee or his insurer was unable to pay. (*Germanotta*, 119 Wis. 2d at 297-98, 349 N.W.2d at 735-36.) Where a statute of another State has been construed by the courts of that State, Illinois courts are bound to follow the highest court that has addressed the statute; interpretation *de novo* would be improper. (See *Ray Schools-Chicago-Inc. v. Cummins*, (1957), 12 Ill. 2d 376, 146 N.E.2d 42; *Wisdom v. Stonewall Insurance Co.* (1986), 139 Ill. App. 3d 1082, 487 N.E.2d 1289.) Here, the trial court properly followed *Germanotta*.

■ Ryder argues that the trial court misconstrued *dicta* in *Germanotta* for the holding, but examination of that case supports the trial court. In *Germanotta*, the plaintiff was injured in a collision with a defendant driving a leased car. The damages were approximately $17,700, and the defendant was able to pay only $15,000. Pursuant to section 344.51, a judgment for the damages exceeding $15,000 was entered against the lessor. The court of appeals affirmed, clearly stating that liability was imposed on the lessor, in abrogation of the common law rule, because the "purpose of [section 344.51] is to provide an answer in damages to a person harmed by the negligence of the lessee." (*Germanotta*, 119 Wis. 2d at 297, 349 N.W.2d at 735-36.) The trial court correctly interpreted *Germanotta*.

Ryder also argues that section 344.51 imposed no direct liability, and further, that liability required a violation of the statute, which was not violated here. However, Ryder's interpretation of section 344.51 requires a *de novo* interpretation and shall not be considered. The trial court correctly interpreted and followed *Germanotta*, and properly imposed liability on Ryder as the lessor of a negligent lessee that was unable to pay the full amount of damages.

The parties extensively briefed the issue of whether the lessor's section 344.51 liability, if any, should be limited. *Germanotta* did not address the extent of the lessor's liability because the excess liability fell within the amounts prescribed by statute. Here, however, the excess liability far exceeds the statutory amounts.

After careful consideration, we conclude that a Wisconsin court addressing the issue of the extent of a lessor's liability would find that liability limited by either the amounts prescribed by statute or the limits of the insurance policy filed by the lessor in compliance

with section 344.51.

■ Initially, we reject Ryder's argument that section 344.51 was satisfied by A&H's $750,000. Section 344.51(1) provides:

> "No person may for compensation rent any motor vehicle to be operated by or with the consent of the person renting the vehicle unless there is filed with the department a good and sufficient bond or policy of insurance issued by an insurer authorized to do an automobile liability insurance or surety business in this state." (Wis. Stat. §344.51(1) (1985).)

We construe section 344.51 to require filing a sufficient bond or policy as a prerequisite to conducting business in Wisconsin as a lessor of motor vehicles. Thus, Ryder was required to have filed a sufficient bond or policy in compliance with section 344.51 before A&H could have rented a vehicle from Ryder. Further, the filing of A&H's $750,00 policy in compliance with section 194.41 shows that policy was filed to cover A&H's primary liability, and not to cover Ryder's lessor liability. Ryder correctly argues that the same *form* may be used to file a policy in compliance with both sections 194.41 and 344.51, but filing in compliance with one statute does not automatically mean compliance with the other. Here, the record shows A&H's policy was filed in compliance with section 194.41. Thus, Ryder cannot look to A&H's policy to satisfy its liability under section 344.51.

■ As *Germanotta* stated, section 344.51 abrogates the common law rule that one party cannot be held liable for the negligence of another. Because lessor liability is statutorily imposed, it is appropriate to look to the statute to find the measure of that liability. Section 344.51(1) provides: "[t]he bond, policy or certificate shall provide that the insurer which issued it will be liable for damages caused by the negligent operation of the motor vehicle in the amounts set forth in section 344.01(2)(d)." (Wis. Stat. §344.51(1) (1985).) The required amounts of insurance set forth in section 344.01(2)(d) in 1986 were $25,000 per person and $50,000 per accident. Thus, section 344.51 states in its own terms the measure of liability. Wis. Stat. §344.01(2)(d) (1985).

However, *Germanotta* noted that a lessor may extend the limits of its liability by filing a policy in compliance with section 344.51 in a greater amount than the statute requires. Accordingly, we find it appropriate to look to the policy Ryder filed in compliance with section 344.51 to find the measure of liability. The record indicates that Ryder filed a $2 million policy in compliance with section 344.51. Accordingly, we find Ryder liable to that extent.

In summary, we affirm the directed verdict of liability against

A&H, the damages award, and the finding that Ryder was not a principal of A&H. We further affirm the imposition of liability on Ryder for the negligence of its lessee, pursuant to Wisconsin law, and hold that Ryder was liable to Mr. and Mrs. Cortes to the limits of the $2 million policy filed by Ryder in compliance with section 344.51. Accordingly, we reduce the judgment of $14,511,000 to $2 million. As so reduced, the judgment in favor of plaintiffs against Ryder is affirmed.

Affirmed as modified.

MANNING, P.J., and CAMPBELL, J., concur.