ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff-Appellee, v. WILLIAM DOWNS *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—91—3880

Opinion filed May 26, 1993.

Michael D. Hughes, of Hughes & Associates, of Flossmoor, for appellant Elise Ziemann.

No brief filed for appellant William Downs.

Hinshaw & Culbertson, of Chicago (Carol Proctor, Nancy G. Lischer, and Marisa A. Mancini, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

In a declaratory judgment action concerning the scope of coverage available under a professional liability insurance policy issued by plaintiff St. Paul Fire & Marine Insurance Company (St. Paul), the trial court granted summary judgment in favor of St. Paul, applying the doctrine of collateral estoppel to prohibit relitigation of the issue of whether a psychotherapist, defendant William Downs (Downs), was acting within the scope of his duties at the time he allegedly engaged in sexual misconduct with defendant Elise Ziemann (Ziemann). In an underlying action, another court had earlier determined that Downs' employer was not liable for his acts under the doctrine of *respondeat superior*.

Ziemann now appeals and asserts that the doctrine of collateral estoppel was improperly applied by the trial court because (1) the issue decided in the underlying lawsuit differed from the issue presented in the instant declaratory judgment action; and (2) the parties to the prior proceeding (*i.e.*, proceedings on a motion to dismiss) differed from the parties to the declaratory judgment action.

For the reasons which follow, we affirm the granting of summary judgment for St. Paul on theory of collateral estoppel.

Elise Ziemann filed a lawsuit (hereinafter the underlying action) against William Downs, her psychotherapist, and Downs' employer, Family Service and Mental Health Center of South Cook County (hereinafter the Center). In her amended complaint, Ziemann alleged that while she was receiving treatment from Downs, he invited her to his residence in Olympia Fields and initiated sexual contact with her. Thereafter, on numerous occasions spanning from November 1987 through February or March 1988, Downs and Ziemann engaged in sexual intercourse.

Ziemann's complaint contained two counts (counts V and VI) against the Center. Count V alleged that the Center was vicariously liable for the acts of Downs. Count VI alleged that the Center breached its duties to Ziemann, alleging several negligent acts or omissions by the Center.

Paragraph 12 of both counts specifically states:

"12. At all times relevant hereto, Defendant DOWNS was an employee, agent or servant of Defendant MENTAL HEALTH CENTER, acting within the scope of his employment as a psychotherapist."

Ziemann's complaint also included four counts against Downs: (1) breach of therapist's duties; (2) assault and battery; (3) intentional infliction of emotional distress; and (4) punitive damages. The counts against Downs are not a part of this appeal and apparently are still pending.

The Center filed a motion to dismiss counts V and VI. It argued that count V should be dismissed because "Downs was acting for his sole benefit and not acting in the course of his employment when he engaged in sexual conduct with Elise Ziemann. Therefore, Family Service and Mental Health Center of South Cook County cannot be held vicariously liable under a doctrine of respondeat superior for William Downs' acts."

The Center contended that count VI should be dismissed "[b]ecause of the convoluted manner in which Count VI is pleaded it is unknown what cause of action is being alleged against [the Center]."

In her response to the Center's motion to dismiss, Ziemann only addressed count V and contended that it alleges a cause of action under the doctrine of *respondeat superior* and bases the Center's liability "upon the wrongful and negligent acts and omissions committed by its employee [Downs], in the course of his treatment of [Ziemann] as a psychotherapist employed by the Mental Health Center" and that

these acts have been committed in the course of his employment, which gives rise to the vicarious liability of the Center alleged in count V.

Ziemann and the Center agreed that an employer may be held liable for the negligent, wilful, malicious or criminal acts of its employees where such acts are committed in the course of employment but not liable for acts committed solely for the benefit of the employee and outside the scope of his employment.

However, the parties disagreed as to how the scope of employment element should be applied to these facts. Ziemann contended that whether an employee's act was committed within the scope of employment is a question of fact for the jury to decide, while the Center asserted it to be a proper threshold question of law for the court.

In the underlying action, on October 16, 1990, Judge Odas Nicholson entered an order that (1) dismissed count V with prejudice and without leave to amend; (2) dismissed count VI without prejudice; and (3) granted Ziemann leave to amend count VI by November 14, 1990. Apparently no hearing preceded this order and there were no findings or reasons given by Judge Nicholson. It does not appear that count VI was amended.

St. Paul, the present plaintiff, issued a professional liability insurance policy to the Center. Following the October 1990 order, St. Paul filed a declaratory judgment action seeking a determination that no coverage existed under the insurance policy issued to the Center for any liability incurred by Downs by reason of the sexual misconduct alleged against Downs occurring outside the scope of his duties as a psychotherapist.

The relevant portions contained in St. Paul's insurance policy provide:

> "Liability. We'll pay amounts you or others protected under this agreement are legally required to pay as damages for covered professional liability claims. To be covered, claims must be based on events that arise out of the profession named in the Coverage Summary.
>
> * * *
>
> Employees. Your employees are protected against covered claims while working for you within the scope of their duties."

St. Paul filed a motion for summary judgment asserting that the Center's motion to dismiss the vicarious liability claim against the Center in the underlying action "was granted on the basis that Mr. DOWNS' alleged sexual misconduct was not within the scope of his employment." Thus, "the alleged sexual exploitation of Ms.

ZIEMANN by Mr. DOWNS is outside the scope of his duties as a psychotherapist and, therefore, he is not an insured under the St. Paul policy."

At the November 8, 1991, hearing, the trial court granted St. Paul's motion for summary judgment based on the doctrine of collateral estoppel reasoning that Ziemann and Downs "are prohibited from relitigating the issue of whether Downs was acting within the scope of his duties." As to the identity of issues, the trial court found that "[t]he issue before the court in the underlying action on the motion to dismiss was whether Downs was acting within the scope of his employment when engaging in sexual conduct with Ziemann or was sexual conduct committed solely for his own benefit. The identical issue is presented in this declaratory judgment action." As to the identity of the parties involved, the trial court found that both "Downs and Ziemann were parties to the 'prior action.' "

Ziemann now appeals the November 1991 order granting summary judgment in favor of St. Paul. Ziemann asserts that the trial court erroneously invoked the doctrine of collateral estoppel because the issue and the parties were different in the declaratory judgment action and the underlying lawsuit. We disagree.

■ Three elements are required for the application of collateral estoppel: (1) a final judgment on the merits entered in the prior action; (2) the issue decided in the prior adjudication is identical with the one presented in the suit in question; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior action. *In re Owens* (1988), 125 Ill. 2d 390, 399-400, 532 N.E.2d 248.

Regarding the first element, the parties do not dispute that a final judgment was entered on the merits in the prior action, *i.e.*, the ruling on the Center's motion to dismiss count V of Ziemann's complaint. The order of dismissal provided appropriate language under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) so that it was final and appealable. However, no one appealed that order.

The second element of collateral estoppel, *i.e.*, the identity of issues, presents the primary dispute in this case. In the declaratory judgment action, the trial court clearly stated its belief that the issue to be decided there was whether Downs was acting within the scope of his duties and that collateral estoppel was appropriate based on the prior adjudication which resulted in dismissal of Ziemann's vicarious liability count against the Center.

Ziemann maintains that there is a distinction between the court's determination in the underlying action that she had not stated a cause

of action against the Center and the court here construing the language of an insurance policy although both admittedly deal with the question of whether the employee is working within the scope of his duties. Ziemann does not suggest that there are any special rules such as presumptions, adverse construction or otherwise in examining the insurance policy nor does she suggest the existence of an ambiguity that would bring these rules of construction into play.

On the other hand, St. Paul contends that the identical issue presented in both suits is whether the sexual misconduct of Downs was within the scope of his employment. St. Paul argues that the underlying court necessarily decided this issue because it was the only issue before that court based on Ziemann's allegations in count V of her complaint wherein Ziemann alleged that Downs was an employee of the Center acting within the scope of his employment as a psychotherapist.

■ Although the causes of action involved in the prior judgment and in the subsequent action are different in nature, the doctrine of collateral estoppel applies and operates as a bar in the subsequent action as to the question, and only that question, actually determined in the prior suit and not as to other matters which might have been litigated and determined. *Benton v. Smith* (1987), 157 Ill. App. 3d 847, 853, 510 N.E.2d 952, citing *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.

Moreover, mere similarity in pleadings does not determine the issue of collateral estoppel. (*Benton,* 157 Ill. App. 3d at 855-56.) Rather, a court must interpret an order in the prior action within the context and parameters of the motions that accompany it and upon which it is predicated (see *Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 335, 570 N.E.2d 361).

In the *YMCA* case, the Illinois Supreme Court explained:

"The doctrine of collateral estoppel applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." (Emphasis in original.) *YMCA,* 101 Ill. 2d at 252.

It is difficult to imagine the exercise in semantics necessary to draw a distinction between the "scope of employment" used in the common law criteria and the "scope of their [employees'] duties" set out in the issued insurance policy. The Center is liable under the theory of *respondeat superior* only for its employees' conduct within the

scope of employment and St. Paul's policy insures only conduct within the scope of the Center's employees' duties. If there is a difference between the two, "duties" seems to be more restrictive than "employment." For example, injury at a company-sponsored baseball game might be within the scope of employment but not likely to be within the scope of any employee's duties. *Law Offices of William W. Schooley v. Industrial Comm'n* (1987), 151 Ill. App. 3d 1069, 503 N.E.2d 1186; see, *e.g., Board of Education v. Industrial Comm'n* (1980), 81 Ill. 2d 17, 405 N.E.2d 783.

However, we do not make that distinction. Although courts have recognized that no precise definition on "scope of employment" exists, the focus is generally upon issues of whether the employee's act was conducted within the constraints of authorized time and location of the employment and whether the conduct was actuated at least in part by a purpose to further the employer's business. *Wilson v. Clark Oil & Refining Corp.* (1985), 134 Ill. App. 3d 1084, 1089, 481 N.E.2d 840; *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 493, 422 N.E.2d 925.

We must acknowledge that the second element of collateral estoppel has been satisfied because the issue as to scope of employment decided in the prior adjudication is indistinguishable from the issue presented to the court in the declaratory judgment action.

The third and final factor to be considered for collateral estoppel is whether the party against whom estoppel is asserted was a party or in privity with a party to the prior action.

In the present case, Ziemann challenges the application of collateral estoppel against Downs and argues that Downs was not a party to count V of Ziemann's complaint, did not answer count V, made no response to the Center's motion to dismiss count V of the complaint, and had no opportunity to litigate the issues raised there. Ziemann also argues that Downs was not in privity with any party to the prior action because his interests were adverse to both Ziemann and the Center, the only parties to the proceedings regarding count V of Ziemann's complaint.

St. Paul contends that Ziemann's arguments are without merit because Downs was a named defendant in the underlying case and thus certainly had an opportunity to respond to the Center's motion and appeal if warranted.

A person who was a party to the first lawsuit is subject to the doctrine of collateral estoppel in the subsequent action. (*Shimkus v. Board of Review of the Illinois Department of Labor* (1983), 117 Ill. App. 3d 826, 830, 454 N.E.2d 36.) "[A] party is one who is named as

such in the record and has been properly served with summons or has entered an appearance." *Collins v. St. Jude Temple No. 1* (1987), 157 Ill. App. 3d 708, 711, 510 N.E.2d 979.

■ To apply collateral estoppel, the parties need not have been arrayed on opposite sides in the prior adjudication and formal issues need not have been raised between them. *Pechous v. Field Enterprises, Inc.* (1983), 114 Ill. App. 3d 605, 608, 449 N.E.2d 243; *Kramer v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 1015, 387 N.E.2d 1105.

Downs is indisputably a named party in the underlying action and as such is susceptible to being collaterally estopped from relitigating issues decided therein.

■ Even though the technical requirements of collateral estoppel may be satisfied, equity should be considered so that the preclusive effect of collateral estoppel will not be applied where it would result in manifest injustice. *Benton*, 157 Ill. App. 3d at 856.

Downs apparently did not respond to the Center's motion to dismiss in the underlying action. The Illinois Supreme Court has noted that "[u]nder special circumstances, the absence of an incentive to litigate might be relevant in the application of collateral estoppel." (*YMCA*, 101 Ill. 2d at 255, citing Restatement (Second) of Judgments §28(5)(c) (1982).) However, the case at bar presents a clear incentive on the part of Downs to respond to the Center's motion because it directly affected his right to claim the protection afforded by insurance. The record reveals that St. Paul sent a reservation of rights letter to Downs on January 2, 1990, before the motion to dismiss was filed on April 30, 1990. In this letter St. Paul stated:

"[T]he acts alleged in the Ziemann Complaint do not constitute acts performed by Mr. Downs while working within the scope of his duties for Family Service & Mental Health Center of South Cook County.

\* \* \*

\*\*\* [T]he policy of liability insurance \*\*\* does not afford coverage for the matters alleged in [Ziemann's complaint]."

Accordingly, Downs knew that the outcome of the Center's motion to dismiss, which was based on the assertion that Downs' alleged misconduct occurred outside the scope of his employment, could impact his right to claim insurance coverage and had ample incentive to participate in the underlying proceedings.

Ziemann's reliance on *Gay v. Open Kitchens, Inc.* (1981), 100 Ill. App. 3d 968, 971, 427 N.E.2d 338, is misplaced because the original two codefendants in *Gay* "were not in adversary positions either le-

gally or in fact" in the first proceeding. In contrast, the codefendants in the underlying action, *i.e.*, Downs and the Center, were adversaries as indicated by the reservation of rights letter which clearly revealed the antagonistic position taken by the Center's insurer.

A named party may not sit idly by as an issue is decided which undermines protection under insurance policies issued to protect such party. *Cf. Tokar v. Crestwood Imports, Inc.* (1988), 177 Ill. App. 3d 422, 434, 532 N.E.2d 382 ("[a] party cannot sit idly by while the trial court undertakes a course of action and then allege error in that regard").

In addition, a party may challenge any judgment adverse to its interests. (*Cortes v. Ryder Truck Rental, Inc.* (1991), 220 Ill. App. 3d 632, 637, 581 N.E.2d 1 (a codefendant had the right to challenge a directed verdict entered against another codefendant).) Even a nonparty has standing to appeal if he has a direct, immediate and substantial interest in the subject matter which would be prejudiced by the judgment or benefited by its reversal. (*In re Estate of Strong* (1990), 194 Ill. App. 3d 219, 550 N.E.2d 1201.) Accordingly, Downs could have contested the granting of the Center's motion to dismiss and would have had standing to pursue an appeal.

■ For all the foregoing reasons, we find that the court in the declaratory judgment action properly invoked the doctrine of collateral estoppel to grant summary judgment in favor of St. Paul.

Although we find that the elements of collateral estoppel have been satisfied, we note that St. Paul alternatively contended that summary judgment was proper even if the doctrine of collateral estoppel did not apply because, as a matter of law, Downs' alleged sexual misconduct with his patient is not within the scope of his duties with the Center.

To support this contention, St. Paul relies on decisions where the courts have ruled that engaging in sexual conduct is outside the scope of one's employment, as a matter of law, as to a day-care teacher (*Randi F. v. High Ridge Y M C A* (1988), 170 Ill. App. 3d 962, 968-69, 524 N.E.2d 966 ("the assault and sexual molestation of a three-year-old child by a teacher's aide at a day-care center is a deviation from the scope of the employment having no relation to the business of the day-care center or the furtherance thereof" and thus there is no basis to hold the employer liable under a theory of *respondeat superior*)); a security guard (*Webb v. Jewel Cos.* (1985), 137 Ill. App. 3d 1004, 1008, 485 N.E.2d 409 ("the sexual molestation of a young girl by a security guard is *** a deviation having no relation to the business of Jewel or the furtherance thereof" and thus it was proper to dismiss the allega-

tions against the employer, Jewel, for failure to state a cause of action on the theory of *respondeat superior*)); and a medical doctor (*Hoover v. University of Chicago Hospitals* (1977), 51 Ill. App. 3d 263, 366 N.E.2d 925 (the alleged sexual assault of a patient by a medical doctor in his office "cannot be interpreted as an act in furtherance of the hospital's business," so it was proper to dismiss a count of the complaint which involved the employer hospital)).

We believe that the nature of the work performed by a psychotherapist is substantially different than that of a day-care teacher as in *Randi F.* or a security guard as in *Webb* or a medical doctor as in *Hoover* so that a psychotherapist who engages in sexual relations with a patient could not be said, as a matter of law, to have acted outside the scope of his employment.

The fiduciary duty owed by a psychotherapist exists due to "the very nature of the therapist-patient relationship, which *** gives rise to a clear duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being, and to refrain from any activity or conduct which carries with it a foreseeable and unreasonable risk of mental or emotional harm to the patient." *Horak v. Biris* (1985), 130 Ill. App. 3d 140, 145, 474 N.E.2d 13 (the court recognized a cause of action for social worker malpractice).

A medically recognized phenomenon known as "transference" often results during therapy. (*Suppressed v. Suppressed* (1990), 206 Ill. App. 3d 918, 924 n.2, 565 N.E.2d 101.) In psychiatric practice, transference has been defined as " 'a phenomenon *** by which the patient transfers feelings toward everyone else to the doctor, who then must react with a proper response, the countertransference, in order to avoid emotional involvement and assist the patient in overcoming problems.' " *Horak*, 130 Ill. App. 3d at 146, quoting *Aetna Life & Casualty Co. v. McCabe* (E.D. Pa. 1983), 556 F. Supp. 1342, 1346.

The psychological dependency of a patient frequently causes the transference phenomenon. (*Suppressed*, 206 Ill. App. 3d at 924 n.2.) A psychotherapist incurs liability for malpractice where the therapist mishandled this phenomenon, as it generally results in sexual relations with the patient.

> "The mishandling of this phenomenon, which generally results in sexual relations or involvement between the psychiatrist or therapist and the patient, has uniformly been considered as malpractice or gross negligence in other jurisdictions, *whether the sexual relations were prescribed by the doctor as part of the therapy, or occurred outside the scope of treatment*." (Empha-

sis added.) (*Horak*, 130 Ill. App. 3d at 146 (and cases cited therein).)

Accordingly, the sexual misconduct of a therapist could be viewed as inside the scope of treatment under the guise of therapy.

Indeed our supreme court has recognized a cause of action grounded in negligence against a therapist who engages in sexual relations with his patient and that patient need not allege physical injury in order to recover for emotional distress. (*Corgan v. Muehling* (1991), 143 Ill. 2d 296, 574 N.E.2d 602.) In *Corgan*, the supreme court cited with approval a Washington case which held that sexual involvement between a psychotherapist and a patient raises a jury question as to the therapist's malpractice. *Corgan*, 143 Ill. 2d at 308, citing *Omer v. Edgren* (1984), 38 Wash. App. 376, 685 P.2d 635.

The elements of a malpractice action are the same elements required of any negligence action as alleged in the present complaint. (*Horak*, 130 Ill. App. 3d at 144.) Although the existence of a duty is a question of law for the court to determine, the alleged breach of a duty is a question of fact for the jury to decide. *Horak*, 130 Ill. App. 3d at 144.

In *Corgan*, the plaintiff alleged that, in having intercourse with her, the defendant failed to recognize or properly deal with the phenomenon of transference and countertransference. The facts alleged in Ziemann's complaint are that Downs, during the course of treatment of Ziemann, breached the duty of care by, among other things, failing "to take appropriate clinical measures with respect to countertransference from" Downs to Ziemann. Were this appeal taken from the order of the underlying action, we might entertain an analysis of how this failure to deal with transference might provide new emotional injury totally unrelated to the condition for which Ziemann originally sought treatment and perhaps a proper matter for a jury's consideration.

The order in the underlying action dismissed count V with prejudice and without leave to amend. We may not have been inclined to preclude Ziemann from amending her complaint to allege counts as recognized in *Corgan* and *Horak*, such as psychological malpractice and negligent infliction of emotional distress.

However, we have determined the application of the principles of collateral estoppel and although we might have addressed an appeal from the underlying action differently than the trial court, we are bound by that court's determination since no appeal was forthcoming.

We recognize that after the alleged events in the present case, the General Assembly enacted the Sexual Exploitation in Psychotherapy

Act (Act) (Ill. Rev. Stat. 1991, ch. 70, par. 800 *et seq.*), which created a cause of action allowing the patient to make the psychotherapist accountable when the therapist engages in sexual contact with the patient (Ill. Rev. Stat. 1991, ch. 70, par. 802) and the employer liable when it knows or has reason to know that the psychotherapist has engaged in sexual contact with a patient (Ill. Rev. Stat. 1991, ch. 70, par. 803). By its express terms, the Act "applies only to causes of action arising on or after its effective date [January 1, 1989]." (Ill. Rev. Stat. 1991, ch. 70, par. 807.) The sexual intercourse alleged in Ziemann's complaint occurred from November 1987 through February or March 1988.

We therefore affirm the decision of the circuit court of Cook County.

Judgment affirmed.

TULLY, P.J., and CERDA, J., concur.