No. 3–10–0149

Filed December 14, 2010

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| TERESA HELFERS-BEITZ, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Peoria County, Illinois |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM DEGELMAN, | ) | |
| | ) | No.  05-L-280 |
| Defendant | ) | |
| | ) | |
| (Albert Beitz, Plaintiff; Proctor Hospital, an | ) | |
| Illinois Corporation, Professional Medical | ) | |
| Associates, Ltd., an Illinois Corporation, and | ) | Honorable |
| Belcrest Services, Ltd., an Illinois Corporation, | ) | Joe Vespa, |
| Defendants-Appellees). | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

The plaintiff, Teresa Helfers-Beitz, sued the defendant, Dr. William Degelman, for sexual misconduct that allegedly occurred during two appointments at Proctor First Care in Peoria.  The plaintiff also sued defendants Proctor Hospital, Professional Medical Associates, Ltd., and Belcrest Services, Ltd. (collectively, the Proctor defendants), alleging that they negligently hired, retained, supervised, and credentialed Dr. Degelman.  The circuit court granted the Proctor defendants' motion for summary judgment, and the plaintiff appealed.  We affirm.

FACTS

The incidents of sexual misconduct giving rise to this action allegedly occurred during two

appointments the plaintiff had with Dr. Degelman in February and March 2005. Dr. Degelman admitted in his deposition that there was no medical reason for his actions. The plaintiff sued Dr. Degelman for assault, battery, intentional affliction of emotional distress, false imprisonment, and negligence. The plaintiff also sued the Proctor defendants for negligent hiring, negligent retention, negligent supervision, and negligent credentialing. The circuit court granted the Proctor defendants' motion for summary judgment, which is the subject of this appeal.

In her pleadings, the plaintiff alleged that the Proctor defendants failed to conduct adequate background checks before hiring, retaining, and credentialing Dr. Degelman. The plaintiff alleged that during Dr. Degelman's previous employment with St. Clare Hospital in Baraboo, Wisconsin, he had been accused of sexual harassment on more than one occasion and had committed an assault and battery against a patient. The plaintiff also alleged that the Proctor defendants breached a general duty to supervise Dr. Degelman.

Numerous depositions were taken during discovery. Testimony given during these depositions indicated that Dr. Degelman was hired in 1999 to work as a full-time physician at Proctor First Care. Todd Baker, who was the general manager of defendant Belcrest Services in 1999, stated that Belcrest was responsible for hiring Dr. Degelman. Baker reviewed Dr. Degelman's curriculum vitae, verified his medical license and malpractice insurance, and conducted an interview. Degelman was also interviewed by the medical director of Belcrest, Dr. Lee Hammond. Dr. Hammond also stated that he reviewed recommendations submitted on Dr. Degelman's behalf.

In 1999, the parent corporation of the Proctor defendants sought to become accredited with the Joint Commission on Accreditation of Healthcare Organizations. To meet the Joint Commission's accreditation standards, the Proctor defendants had to credential all of their

2

physicians. Since that time, including the biannual recredentialing process, the Proctor defendants have used the Peoria Medical Society (PMS) to verify their physicians' credentials. PMS gathers background information on the physicians by sending requests to the physicians' former employers, seeking, <u>inter alia</u>, information on past misconduct. However, any responses to these requests are purely voluntary.

Dr. Degelman was credentialed as a part of the two-year process of becoming accredited with the Joint Commission. PMS did not receive any negative information from Dr. Degelman's previous employers, including St. Clare Hospital.

The plaintiff, however, disputed that PMS requested information from St. Clare Hospital. The plaintiff produced a letter from attorney Sarah E. Coyne in Madison, Wisconsin. The letter was dated November 6, 2009, and was addressed to an attorney at the firm representing the plaintiff. In the letter, Coyne stated that she "checked" with St. Clare Hospital and was told that, "[t]here was no credentialing inquiry in 2001. There were no credentialing inquiries to which the hospital responded by refusing to provide records."

The plaintiff also sought to challenge the adequacy of PMS' methods through the affidavit of Dawn Nunley, who had served for 17 years as a credentialing expert for Illinois Valley Community Hospital (IVCH) in Peru. During her tenure at IVCH, Nunley was contacted by PMS, which attempted to solicit IVCH as a client for its credential verification business. Nunley decided not to use PMS, however, as she believed PMS' background checks were inadequate. Nunley premised her opinion in part on Coyne's letter, although the affidavit contained no indication that the letter contained facts or data of the type reasonably relied upon by experts in Nunley's field. Despite Nunley's opinion, deposition testimony revealed that all three hospitals in the Peoria area

3

use PMS as their credential verification organization.

In further support of her claims, the plaintiff submitted numerous documents she allegedly received from St. Clare Hospital in response to a December 2005 subpoena. The documents indicated that, while Dr. Degelman was employed by St. Clare Hospital, he had been the subject of several complaints regarding the adequacy of treatment he provided to patients. The documents also indicated that a coworker alleged Dr. Degelman sexually harassed her on one occasion.

In response to the plaintiff's claims, the Proctor defendants argued that they had no reason to know of any misconduct from Dr. Degelman's past. The Proctor defendants pointed out that St. Clare Hospital did not report any misconduct in their responses to PMS' information requests. Further, deposition testimony revealed that Dr. Degelman's personnel file was reviewed after the February and March 2005 incidents, and the file contained no complaints from his time with the Proctor defendants. Accordingly, the Proctor defendants argued they had no reason to supervise Dr. Degelman in the manner suggested by the plaintiff.

After a hearing, the circuit court granted the Proctor defendants' motion for summary judgment. The plaintiff appealed.

ANALYSIS

On appeal, the plaintiff argues that the circuit court erred when it granted the Proctor defendants' motion for summary judgment. Specifically, the plaintiff argues that issues of material fact remain on each of the negligent hiring, negligent retention, negligent supervision, and negligent credentialing claims, as well as on whether the Proctor defendants are liable for Dr. Degelman's actions under the doctrine of *respondeat superior*. We will address each argument in turn.

A grant of summary judgment is appropriate if the pleadings, depositions, admissions, and

4

affidavits on file, liberally construed in favor of the nonmoving party, show that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2008); Clark Investments, Inc. v. Airstream, Inc., 399 Ill. App. 3d 209, 212-13, 926 N.E.2d 408, 411 (2010). "If what is contained in the papers on file would constitute all of the evidence before a court and would be insufficient to go to a jury but would require a court to direct a verdict, summary judgment should be entered." Pyne v. Witmer, 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1308 (1989), citing Fooden v. Board of Governors of State Colleges & Universities of Illinois, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971).

While the movant always has the burden of persuasion on a motion for summary judgment, the burden of production can shift to the nonmovant. Pecora v. County of Cook, 323 Ill. App. 3d 917, 933, 752 N.E.2d 532, 545 (2001).

> "A defendant who moves for summary judgment may meet its initial burden of production in at least two ways: (1) by affirmatively disproving the plaintiff's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (traditional test) [citation], or (2) by establishing that the nonmovant lacks sufficient evidence to prove an essential element of the cause of action (Celotex test) (see Rice v. AAA Aerostar, Inc., 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 273, 106 S. Ct. 2548, 2552 (1986); [citation])." Williams v. Covenant Medical Center, 316 Ill. App. 3d 682, 688-89, 737 N.E.2d 662, 668 (2000).

In either instance, once the defendant-movant has met its initial burden of production, the burden shifts to the nonmovant. Hutchcraft v. Independent Mechanical Industries, Inc., 312 Ill. App. 3d 351,

5

355, 726 N.E.2d 1171, 1175 (2000). At this point, the nonmovant cannot rest on its pleadings to raise genuine issues of material fact. See Kleiss v. Bozdech, 349 Ill. App. 3d 336, 350, 811 N.E.2d 330, 340 (2004). While the nonmovant need not prove its case, the nonmovant must produce facts that would arguably entitle it to a favorable judgment. Kleiss, 349 Ill. App. 3d at 350, 811 N.E.2d at 341.

We review a circuit court's grant of summary judgment under the de novo standard. Clark Investments, 399 Ill. App. 3d at 213, 926 N.E.2d at 412.

First, the plaintiff argues that the circuit court erred when it granted summary judgment in favor of the Proctor defendants on the negligent hiring, retention, and supervision claims.

Claims for negligent hiring and negligent retention require a plaintiff to establish:

"(1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury." Van Horne v. Muller, 185 Ill. 2d 299, 311, 705 N.E.2d 898, 904 (1998).

The tort of negligent supervision has not been distinguished from the tort of negligent retention. Zahl v. Krupa, 399 Ill. App. 3d 993, 1018, 927 N.E.2d 262, 283 (2010).

The plaintiff's claims in this case invoke the Proctor defendants' administrative and managerial duties to patients. Such actions sound in ordinary negligence, and the standard of care in these types of actions is conduct that is reasonable in light of the apparent risk. Heastie v. Roberts, 226 Ill. 2d 515, 553, 877 N.E.2d 1064, 1087 (2007). "Whether a hospital has been reasonably careful may be shown by a wide variety of evidence, including, but not limited to, expert testimony,

6

hospital bylaws, statutes, accreditation standards, custom and community practice." Heastie, 226 Ill. 2d at 553, 877 N.E.2d at 1087-88.

Our review of the papers on file reveals that the plaintiff failed to produce facts to indicate that the Proctor defendants should have known of Dr. Degelman's past misconduct when they hired him. Deposition testimony established that, at the time Dr. Degelman was hired, Belcrest reviewed his curriculum vitae, verified his medical license and malpractice insurance, and reviewed recommendations submitted on Dr. Degelman's behalf. Baker and Hammond also conducted separate interviews of Dr. Degelman. At the time Belcrest hired Dr. Degelman, they had no knowledge of any misconduct from his past. The plaintiff opined that Belcrest should have conducted a background check, but did not produce any facts to indicate that Belcrest's procedure was unreasonable or a breach of a standard of care. Because the plaintiff did not produce facts that would arguably entitle her to judgment on her negligent hiring claim, we hold that the circuit court's grant of summary judgment in this regard was proper.

The plaintiff also failed to produce facts to indicate that the Proctor defendants should have known of Dr. Degelman's past misconduct at the time they retained him. Deposition testimony established that St. Clare Hospital did not report any negative information on Dr. Degelman to PMS. While the plaintiff presented the Coyne letter to dispute that PMS contacted St. Clare Hospital, the Coyne letter was not a sworn affidavit and was not properly before the circuit court for the purposes of the summary judgment determination.[1] 735 ILCS 5/2–1005(e) (West 2008); 210 Ill. 2d R. 191(a);

_____

[1] In this regard, we also note that Nunley's affidavit contained no indication that the Coyne letter contained facts or data of the type reasonably relied upon by experts in Nunley's field. Thus, the Coyne letter was not admissible even for the limited purpose of explaining the

7

see Harris Bank Hinsdale, N.A. v. Caliendo, 235 Ill. App. 3d 1013, 1025, 601 N.E.2d 1330, 1338 (1992) ("evidence that would be inadmissible at trial may not be considered in support of or in opposition to a motion for summary judgment"); Complete Conference Coordinators, Inc. v. Kumon North America, Inc., 394 Ill. App. 3d 105, 108-09, 915 N.E.2d 88, 91-92 (2009) (in Illinois, documents are not authenticated simply by producing them in discovery). Thus, the Coyne letter is no avail to the plaintiff.

In addition, the Nunley affidavit cannot save the plaintiff's negligent retention claim. Nunley opined that PMS' background checks were inadequate. While all three hospitals in Peoria use PMS, Nunley did not use PMS in the physician credentialing process at IVCH in Peru. However, as Nunley merely stated that she pursued a different course of conduct, her affidavit establishes neither an industry standard nor an unreasonableness in the Proctor defendants' procedures. See Advincula v. United Blood Services, 176 Ill. 2d 1, 24, 678 N.E.2d 1009, 1021 (1996) ("[a] difference of opinion between acceptable but alternative courses of conduct is not inconsistent with the exercise of due care"). Because the plaintiff did not produce facts that would arguably entitle her to judgment on her negligent retention claim, we hold that the circuit court's grant of summary judgment in this regard was proper.

Likewise, the plaintiff failed to produce facts to indicate that the Proctor defendants knew or should have known that Dr. Degelman required some sort of supervision. As previously mentioned, the Proctor defendants had no knowledge of Dr. Degelman's past misconduct while employed by St. Clare Hospital. Further, a review of his personnel file in 2005 showed that he had

---

bases for Nunley's opinion. See Wilson v. Clark, 84 Ill. 2d 186, 193-94, 417 N.E.2d 1322, 1326-27 (1981).

8

not been the subject of any complaints from his time with the Proctor defendants. Because the plaintiff did not produce facts that would arguably entitle her to judgment on her negligent supervision claim, we hold that the circuit court's grant of summary judgment in this regard was proper.

Second, the plaintiff argues that the circuit court erred when it granted summary judgment in favor of the Proctor defendants on the negligent credentialing claim.

The tort of negligent credentialing has three elements. Frigo v. Silver Cross Hospital & Medical Center, 377 Ill. App. 3d 43, 72, 876 N.E.2d 697, 723 (2007). The first element requires the plaintiff to "prove the hospital failed to meet the standard of reasonable care in the selection of the physician it granted medical staff privileges to whose treatment provided the basis for the underlying medical malpractice claim." Frigo, 377 Ill. App. 3d at 72, 876 N.E.2d at 723.

In this case, as the circuit court noted, there is no underlying medical malpractice claim. Thus, the plaintiff could not establish an element of her claim. Accordingly, the court did not err when it granted summary judgment in favor of the Proctor defendants on the negligent credentialing claim. See Day v. Menard, Inc., 386 Ill. App. 3d 681, 682, 899 N.E.2d 501, 503 (2008).

Third, the plaintiff argues that genuine issues of material fact remain on whether the Proctor defendants are liable for Dr. Degelman's actions under the doctrine of *respondeat superior.*

Under the doctrine of *respondeat superior*, an employer can be liable for the tortious conduct of its employee if the conduct fell within the scope of employment. Bagent v. Blessing Care Corp., 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007). In general, conduct that is performed solely for the benefit of the employee is not considered to be within the scope of employment, including acts of sexual misconduct. Deloney v. Board of Education of Thornton Township, 281 Ill. App. 3d 775,

9

783-84, 666 N.E.2d 792, 797-98 (1996).

In support of her argument that Dr. Degelman's acts were performed on behalf of his employer, the plaintiff cites to St. Paul Fire & Marine Insurance Co. v. Downs, 247 Ill. App. 3d 382, 391-92, 617 N.E.2d 338, 344 (1993), for the proposition that an employee's sexual misconduct is not outside of the scope of employment as a matter of law. St. Paul involved the sexual misconduct of a psychotherapist. St. Paul, 247 Ill. App. 3d at 384, 617 N.E.2d at 339. The St. Paul court noted that the nature of a psychotherapist's work frequently involves the phenomenon of transference, whereby a patient transfers his or her feelings toward other people to the psychotherapist, which in turn requires the psychotherapist to counteract the transfer to prevent emotional involvement with the patient. St. Paul, 247 Ill. App. 3d at 391, 617 N.E.2d at 344. The psychotherapist can incur liability if he or she mishandled the transfer and sexual relations with the patient resulted. St. Paul, 247 Ill. App. 3d at 385, 617 N.E.2d at 339. In holding that the sexual misconduct of a psychotherapist can fall within the scope of employment, the St. Paul court acknowledged that this unique type of work substantially differed from the nature of work performed by a medical doctor. St. Paul, 247 Ill. App. 3d at 391-92, 617 N.E.2d at 344. In this way, St. Paul is clearly distinguishable from the instant case.

Dr. Degelman's acts of alleged sexual misconduct cannot be interpreted as being performed on behalf of the Proctor defendants and therefore did not fall within the scope of Dr. Degelman's employment. He even admitted in his deposition that there was no medical reason for his actions. Accordingly, the Proctor defendants are not liable for Dr. Degelman's actions under the doctrine of *respondeat superior.*

For the foregoing reasons, we affirm the summary judgment of the circuit court of Peoria

10

County on the claims for negligent hiring, retention, supervision, and credentialing.

Affirmed.

MCDADE and WRIGHT J. J. concurring.